BASS, (UNITED STATES v.) See Case No. 14,537.

════════

## Case No. 1,094.

BASSELL v. AMERICAN FIRE INS. CO.

[2 Hughes, 531.][1]

Circuit Court, E. D. Virginia. Sept. Term, 1877.

INSURANCE — CONDITIONS IN POLICY — AGENT OF INSURED — CHARACTER OF INSURED PROPERTY— QUESTIONS OF LAW AND FACT.

1. The conditions annexed to a policy of insurance, in order to bind the insured, must be

────────────────

[1] [Reported by Hon. Robert W. Hughes. District Judge, and here reprinted by permission.]

brought to his attention at or before the time of the contract of insurance.

2. If a solicitor of insurance by his acts makes himself the agent of the insurer, and the insurer contracts through him and by him, a clause in the policy declaring that persons so acting are agents of the insured and not of the insurer, is invalid to change the character of agent of the insurer held by the solicitor described.

[See Mohr & Mohr Distilling Co. v. Ohio Ins. Co., 13 Fed. 74.]

3. Whether certain classes of goods embraced in a stock of merchandise insured as "dry goods," were or were not "dry goods," is a question of fact for the jury, and not necessarily one of mere law for the court.

At law. Action on the case, on a policy of insurance. The plaintiff, John Y. Bassell, was a merchant in the town of Leesburg, Loudoun county, Virginia, and in the fall of 1876 set up a branch store in Middleburg, in the same county, and transferred a portion of his stock from his house in Leesburg to his branch store in Middleburg. Desiring to insure the stock of this branch store, and being sick and confined to his bed, he sent for one Peter F. Shroff, living in Leesburg and operating in insurance business, who, according to the pretensions of the plaintiff, was acting as the agent of the defendant and other companies. Shroff said he was well acquainted with the premises, and asked what stock the plaintiff proposed to keep and insure, to which plaintiff replied, "Dry goods, etc.; just such as I have in my store here." Shroff asked if he intended to keep kerosene oil, or anything of that character; to which plaintiff replied, "Only what I need for lighting my store." To which Shroff rejoined, "Of course, that is presumed; I only meant to inquire if you intended to keep it in stock for sale;" or words to that effect. Shroff then sent on the application, and in a few days the policy was received by him, and he notified Bassell that he had the policy, and would furnish it to him upon the payment of the premium. The plaintiff sent him, by plaintiff's clerk, the amount of premium required by Shroff, and received in return the policy sued upon. Shroff forwarded the premium to the defendant through Wise & Co., at Alexandria, Virginia; and its receipt was admitted. Wise & Co. were the agents of the defendant, for whom Shroff was a sort of canvasser.

The policy contained the following clauses; but it did not appear that they were brought to the knowledge or attention of the plaintiff, —to wit: At the beginning of the policy there were words making the conditions annexed to it a part of the policy, and also these words: "This policy of insurance witnesseth, that the American Fire Insurance Company have received of John Y. Bassell twelve dollars ——— cents, premium for insuring (according to the tenor of their printed conditions hereunto annexed, which are hereby made a part of this contract of insurance)," etc. And also on the face of the policy, in

red ink: "That any party, other than the assured, procuring the insurance, either at the office of the company or its agents, shall be considered the agent of the assured, and not of this company. Benzin, naphtha, petroleum oil, and other inflammable liquids, the storage or use of which is subject to legal restrictions, prohibited, unless permission is indorsed in writing on this policy." And on the back of the policy, under the head of "Conditions of Insurance," etc., in very small type, was the following: "XIV. This company is not liable for damages by lightning, or explosions of any kind, except by fire consequent thereon; nor where the fire heat is used in any process, to the articles damaged by such process; nor to goods in show windows, where the fire originates from lights in said windows; nor where camphine, pine oil, burning fluid, or any similar inflammable liquid is used for light or kept for sale, by the assured, without permission noted on the policy."

On the 15th day of September, 1876, a fire occurred in the aforesaid store in Middleburg, and the entire stock of goods was either destroyed or damaged by the fire; and the loss (testified to by the clerks, and by merchants of the town who had seen the stock) amounted to from $4000 to $4500. The inventories were destroyed by the fire; but the plaintiff forthwith made out his preliminary proof of loss as best he could, and it was forwarded to the defendant. Thereupon Thomas M. Alfriend, the general agent for defendant in Virginia, went to the scene of the fire, examined the premises and the damaged goods, and with the plaintiff agreed upon an estimated value for said damaged goods, leaving the loss far in excess of the amount of the policy. According to plaintiff's evidence, Alfriend expressed himself entirely satisfied with the preliminary proofs and the adjustment of the loss; and went away after giving the plaintiff to understand that the policy would be paid in sixty days, or sooner for a reasonable discount. Alfriend denied this statement in his evidence. The day this suit was brought the plaintiff received notice, from the Philadelphia office, of objections to his preliminary proofs, and requiring a bill of particulars, etc. It was proved also at the trial that the plaintiff's bills, invoices, etc., were destroyed by the fire, and it was therefore impossible for him to have furnished a bill of particulars (even if the defendant's agent, Alfriend, had not already waived it).

In the progress of the trial the plaintiff introduced the aforesaid Peter F. Shroff, whom he claimed to have dealt with as agent of the defendant; but who testified that he was not the agent of the defendant. There was no evidence to prove, or tending to prove, the cause or origin of the fire. It was not proved that the fire was caused by kerosene oil used in a lamp, or what sort of oil was in a lamp which was proved to be in the store.

The jury found a verdict at the July term of the court for the plaintiff. [Unreported.] A motion was forthwith entered for a new trial; and this motion was heard at the adjourned term in September. On the hearing of the motion the defendant's counsel read the affidavit of H. C. Ryon, containing material averments, as newly discovered testimony; and the plaintiff in reply read the affidavit of said Ryon, exactly the counterpart, in every particular, of his affidavit given to defendant, and also the affidavit of Ryon and others, to prove that the defendant's agent who was conducting the suit had had interviews with Ryon previous to the trial; besides affidavits of others as to Ryon's credibility, etc.

In support of its motion for a new trial, the defendant company relied upon the following grounds, to wit:

1. The verdict was contrary to the evidence.

2. The plaintiff has discovered evidence since the trial of the most material character (Ryon's), which by the exercise of extraordinary diligence the defendant could not have obtained and used at the trial. The defendant had no knowledge of the witness (Ryon) or of what he could testify to, and has only learned these facts since the trial. This evidence will be positive and direct, to the most material facts in the case, viz., the character and value of the stock of goods in the plaintiff's store at Middleburg at the time of the fire, the disposition of the fire in the store, the origin of the fire, the extent of the fire, the conduct of the witnesses, Crissy and Noland, the clerks of the plaintiff. The evidence will also establish the fact, that said clerks had lost the key of the store some days before the fire, and that the store (as they said) had been entered and robbed the night before the fire. That there never were any goods kept under the counter; that there were no shelves nor any other convenience for keeping goods under the counter; that there were no goods under the counter at the time of the fire. The affidavit of the witness is in the defendant's possession, and will be filed at the time of the hearing of the motion for a new trial.

3. For misdirection on the part of the court in this, to wit:

1st. That Shroff was the agent of the defendant. 2d. That the conditions attached to the policy and made a part of the contract by the very first paragraph in the body of the policy, did not bind the plaintiff unless his attention was directed to said conditions, before or at the time the policy was issued. 3d. That the jury was to determine whether or not boots and shoes, hats and caps, were dry goods.

4. For refusing to instruct the jury as follows, to wit: 1st. That every one may be presumed to remember some particulars though his books may be lost, and that a statement in gross, such as that furnished by the plaintiff, merely reiterating the descrip-

tion in the policy, was not such as the law required the plaintiff to make. 2d. That proof of loss was insufficient, and thereby leaving that question for the jury to pass upon.

[Motion denied.]

HUGHES, District Judge. I do not think that Ryon's affidavit makes a sufficient case for a new trial on the facts. Even if it did, his own subsequent affidavit is in direct contradiction to it. The objection on the score of misdirection of the court deserves more serious consideration.

1st. As to Shroff's relation to the parties. That Shroff was not the agent of the insurers or of the insurers' resident agents at Alexandria in general, is readily conceded. But in this case he contracted with Bassell for the insurance; he received the premium in person; which having been transmitted to the insurers in Philadelphia, directly or indirectly by him, a policy was returned through him, and the policy was by him delivered to the insured. Such is my recollection and understanding of the testimony. Now whether the insurers, or their resident agents, Wise & Co., or Shroff, or even Bassell himself, regarded Shroff as the agent of the insurer, he was nevertheless so in the eye of the law. A person may be the agent of another in law without intending it. He may be so, without that other person intending it. He may be so without either of the parties for whom he was the intermediary, intending it. See Ex parte White, (In re Nevill,) 6 Ch. App. 403. It is acts which constitute agency, and not intentions, or even disavowals, or denials, or even contracts of denial as that embodied in this policy. Shroff was by his acts the agent of the insurers in this matter, the agent pro hac vice; and he was so, notwithstanding the clause in the policy which he himself transmitted to the insured contracting that he was not. The agency had been established by his acts, and its functions performed before the unipartite policy was delivered.

2d. The second instruction was to the effect that the conditions of a policy indorsed in small type upon the back of it are not parts of it, to bind the insured, unless they are distinctly drawn to the attention of the insured at the time of the contract. Policies of insurance differ from ordinary contracts in this, that while ordinary contracts are signed by both parties, policies are unipartite in form, signed only by the insurer. In general they are transmitted to the insured after the agent and the insured have contracted; after the insured has paid a premium, and under circumstances which put it out of his power to object to such provisions inserted in it as were not in his mind or in the oral understanding which was had when he paid the premium; and policies are most of them

loaded down with such provisions. My instruction seemed to be accepted by the defendant's counsel at the trial, who contended before the jury that the words in the very first paragraph of the body of the policy, making the annexed conditions a part of the policy, effected a compliance with the instruction. I thought so myself; but it was a question of fact left to the jury, and the jury differed both from defendant's counsel and myself. Union Mut. Ins. Co. v. Wilkinson, 13 Wall. [80 U. S.] 222. That the nonsigning party to a contract, unipartite in form, ought to have notice of conditions not in the body of the contract is too obvious a principle of law to be disputed. The jury thought that the words of reference in the body of the contract did not convey this notice, and I do not see my way to setting aside the verdict on that account.

3d. As to whether boots and shoes, hats and caps, were embraced in the term "dry goods," and whether that question ought to have been referred to the jury, I think the ruling of the court was right. If a term used in a contract is ambiguous, the court may resort to any rational and proper means of interpreting its meaning. It usually consults the lexicographers. If they are at fault, it resorts to other means of ascertaining the true purport of a word. At last, however, in case of doubt, it is the intention of parties to the contract which is the real point to be ascertained, and when this may be interpreted by usage and custom, especially by the understanding of a term in trade, the question may well be left to a jury largely composed of intelligent merchants, as this jury was, for their determination. In the case under consideration this course was peculiarly proper, and the court adheres to its ruling.

4th. That an insured person ought in general to be required to furnish a detailed statement of the particulars of his loss is not denied. If he shows by evidence that he was prevented from doing so by the consumption by the fire of his invoices, that requirement is satisfied. Dishonest men might endeavor to furnish the particulars from a fertile memory and invention, but it is an argument for the integrity of the insured person, if he declines this expedient, and confesses flatly his inability to furnish the particulars after his means of doing so are destroyed. I think there was in this case a waiver by Alfriend, general agent of the defendant's company, of further proofs of loss than those furnished, and that the notification from the Philadelphia office, sent simultaneously to bringing the suit, came too late to enable the insured to supply the omission. The motion for a new trial is denied.