BROWN et ux. v. UNITED STATES CASUALTY CO.

(Circuit Court, W. D. Tennessee, E. D. May 5, 1898.)

No. 140.

1. INSURANCE—SUBSTITUTED POLICY—NEW CONDITIONS.
An insurance company, which offers to issue, free of charge, to the policy holders of an insolvent company, its own policies for the period for which premiums have been paid in the old company, is bound, on acceptance of its offer, only by the stipulations in its own substituted policy, and not by those in the original policy of the insolvent company.

2. SAME—ACCIDENT POLICY—MURDER.
Where an accident insurance policy provides that the insurance shall not cover "death * · * * resulting from * * * intentional injuries inflicted by any person," no recovery can be had against the company in case of the murder of the insured.

Trial by the court without a jury.

During the argument of the demurrer filed in the record the parties stipulated in writing that the case should be tried by the court without a jury, and thereupon filed an agreed statement of facts upon which the cause was heard. The stipulation to try without a jury and the agreed statement of facts are filed in the record.

Special Finding of Facts.

The court therefore finds the following facts:

(1) The testator, H. B. Miller, was the holder of a policy in the United States Mutual Accident Association, of the city of New York, No. 671, which insured him "against personal bodily injuries effected through external, violent, and accidental means." It contains in none of its stipulations any expressed limitation or exception upon the liability declared by the above-quoted covenant of insurance, so far as applicable to the facts of this case.

(2) The United States Mutual Accident Association becoming insolvent, and being wound up as such, the defendant, the United States Casualty Company, issued its circular letter inviting the policy holders of the defunct company to accept a policy in that company, free of cost, for the period for which the premiums had been paid in the defunct company; this being a business scheme to possess itself, as successor, of the business of the insolvent company.

(3) This offer Miller accepted by returning to the defendant company a postal card whereon was printed the form of acceptance which had been sent to him by the defendant company for that purpose. It reads as follows:

"United States Casualty Company: I hereby reaffirm the statements and warranties contained in my application to the United States Mutual Accident Association for membership therein, and authorize the United States Casualty Company to issue to me an accident policy based thereon, conditioned that my insurance shall be carried without further charge to the date to which it now stands paid on the books of the United States Mutual Accident Asso-

ciation; and I agree that upon the issue of such new policy my present policies in the United States Mutual Accident Association shall thereafter be void and of no effect, reserving my right to share in the distribution of any assets of the United States Mutual Accident Association after payment of all liabilities.                         H. P. Miller, Milan, Tennessee."

(4) Thereupon the defendant company issued to him the policy sued on in this case, insuring him "against bodily injuries sustained through external violent, and accidental means," but also containing among its other stipula tions the following condition:

"First. The insurance under this contract shall not cover disappearances, or injuries, whether fatal or disabling, of which there is no visible mark on the body (the body in case of death not to be deemed such mark), nor cover injuries, dismemberment, disability, or death sustained while the insured is bereft of reason, sight, or hearing, or while mining, blasting, wrecking, or employed in the manufacture, sale, transportation, or handling of any explosive compound, or while, or in consequence of, violating the law, or while under the influence of intoxicating drinks or narcotics, or in consequence thereof, or while in any wild or uncivilized countries, or while riding or traveling in any vehicle or conveyance not provided for transportation of passengers, or resulting from or caused, directly or indirectly, wholly or in part, or while so affected, by vertigo, somnambulism, bodily infirmities, deformities, or disease of any kind, gas or poison in any form or manner, contact with poisonous substances, surgical or medical treatment, dueling, fighting, wrestling, war, riot, lifting, overexertion, suicide (sane or insane), sunstroke, freezing, riding or driving races, voluntary exposure to unnecessary danger, or intentional injuries inflicted by any person."

(5) Subsequently, on the 31st day of December, 1896, Miller was killed and murdered in his hotel by negroes striking him upon the head with a railway coupling pin, from which injuries he died almost immediately. He was killed while secluded in a water-closet, for the purpose of robbing his person of the money which he then carried, and which the murderers took from him. It is agreed, therefore, by the parties, that he was guilty of no negligence in being at the place where he was murdered, and that he had no knowledge whatever of the intention on the part of the parties who murdered him. It is also agreed that the two murderers have been convicted of the crime.

### Conclusions of Law Found by the Court.

First. The defendant company is bound only by the stipulations of its own substituted policy, and not at all by the broader stipulations of the original policy of its predecessor.

Secondly. The injuries through which the death was effected fall within the stipulated exceptions contained in the conditions of the policy. It was a death resulting from, and wholly caused directly by, intentional injuries inflicted by other persons, his murderers; wherefore the defendant company is not liable in this action, and the judgment should be for the defendant, which is ordered accordingly.

S. P. L. Hill, J. P. Rhodes, and J. J. Hays, for plaintiffs.
Watkins & Latimore, for defendant.

HAMMOND, J. (after stating the facts as above). The notion that Miller had contracted for an insurance as broad as the original policy, and was not, under the circumstances, bound by the more restricted limitations of the substituted policy, is wholly untenable. There is nothing whatever in the circular letter found in the evidence offering to bind the substituted company to the old policy of the defunct company. The first company was a mutual company, the second was a stock company; and this, of itself, would suggest the necessity of some change of the form of contract, and the necessity for a new policy. There was not a guaranty or an assumption of an old contract, nor

any offer of such an arrangement, but only one to issue "free insur-ance" for the period for which the premium had been paid in the old company, with the evident expectation of continuing the business upon the receipt of the newly-accrued premiums, and thereby taking the policy holder into the new company as one of its policy holders. This was the natural and orderly method growing out of the business scheme. But, no matter how that might be, Miller's own acceptance on the postal card in its very words authorized the United States Casualty Company to issue to him an accident insurance policy based upon his application to the old company, and not upon the terms and stipulations of the old policy; and then he says, "I agree that upon the issue of such new policy my present policies in the United States Accident Association shall thereafter be void and of no effect." This shows conclusively that he contemplated the issuance of a new policy, and the well-known principle of law is that when he accepted the policy he accepted all its stipulations as they were contained therein, including the conditions which were made a part of it.

Much stress has been laid upon what I will call the "fine print" argument, so often resorted to in cases like this. There are occa-sions, undoubtedly, when there is force in this argument, and the courts have sometimes sustained it when the circumstances were such that special notice of the particular condition would be required to charge the policy holder with a knowledge of the fact of its existence. A pertinent illustration is found in the case cited by counsel of Bassell v. Insurance Co., 2 Hughes, 531, Fed. Cas. No. 1,094. There, in the negotiations with the agent of the insurance company, the policy holder had told him that he used kerosene oil for the lighting of his store, but did not keep it in stock. Afterwards a policy was sent to him, in which there was a condition printed that kerosene oil should not be used for lighting the premises, except by special permission; and it was held that under the circumstances the policy holder was not bound by the condition without having his attention specially called to it, for the obvious reason that he had negotiated for a con-tract which permitted him to use the kerosene oil, as he might reason-ably suppose; and the appearance of the condition in fine print on the back of the policy with innumerable other conditions was held not to charge him with notice, or bind him to a change of the contract which he had made. Other cases might be cited to the same effect, but they do not at all proceed upon the theory of eliminating the con-ditions that are printed in fine print, but depend upon the particular circumstances of the making of the contract which show that the policy holder had never agreed to it. It is unnecessary to consider these cases more particularly, for the reason that the present case is destitute of a single circumstance to invoke that principle. It is well enough to remark, in the first place, that there is no fine print on this policy. The condition involved is conspicuously printed in type as large as that on the face of the policy, and in such manner as to at-tract the attention of any one who should give the subject the least attention. The argument by the plaintiff assumes that Miller, being aware of the fact that he had a broad policy covering his life if he should be murdered, naturally supposed that the new policy was as

broad as the old, and that he was misled into accepting the limitations of the new policy for want of his attention being called to the distinctions between the two; but there is not the least circumstance in this case to justify the assumption that Miller ever knew or recognized any such difference.    Even now and here, on the authority of the cases cited pro and con, counsel differ as to whether or not the old policy, properly construed, would cover a life lost by murder.    It may be conceded that the better opinion is that it does, yet it is not at all probable that Miller's attention was called to the conflict about the construction of his original policy, and there is no proof that between him and any agent of the company there was ever any reference made to that subject.    Doubtless he took the policy as it was given to him, without any consideration of that particular point.    When the new policy came into existence, the circumstances were such that naturally he would be likely to accept anything that was offered to him.    His old company had collapsed, and his old insurance was worthless.    The new was offered to him gratuitously.    He was paying nothing for it, and it is well denominated "free insurance"; and it is altogether probable that he was following the homely adage not to look a gift horse in the mouth.    So there is no circumstance proved here like that in the case just cited from the federal court of Virginia to invoke in behalf of the policy holder the idea that he was misled, and not advised of the conditions of his policy; nothing whatever to overcome the firmly established doctrine that ordinarily and without special circumstance the policy holder, by accepting the policy, takes it as it is written or printed, with all its terms and conditions alike binding upon him; and this is particularly so when he agrees, as he did in this case, on the face of the policy itself, that the insurance should be "subject to all conditions indorsed hereon." He must be conclusively presumed to have read his policy unless the circumstances take the case out of that rule.    Insurance Co. v. Fletcher, 117 U. S. 519, 529, 6 Sup. Ct. 837.

The great and substantial struggle between the parties in this case depends upon the proper construction of the language of the condition containing the exception relied upon to eliminate any liability in a case where the policy holder was murdered.    Deeming it possible that the rights of the parties might depend upon the construction of the phraseology of the old policy insuring in its broad terms against "bodily injuries effected through external, violent, and accidental means," without any limitation applicable to the case of one murdered, or that it was possible that the exception in the new policy might be disregarded upon the "fine print" theory, there was a very learned and able argument between counsel upon the authorities on the question whether or not the words of the old policy within themselves would cover a case of murder; whether death by murder, in the sense of the law, is a death by "accidental means," which are the words of both policies; but we are relieved from a consideration of this argument, or of the cases on either side, by the holding that the rights of the parties do not depend upon the old policy, and that the disputed condition of the new policy was accepted by Miller, and binding on him.    It then becomes a question of the proper construction

of the language of the given condition or exception, as quoted in the special finding of facts.

Again, an ingenious argument has been made to the effect that, notwithstanding the condition, the case of murder is not taken from the broad language of the insurance clause of the policy, and, conceding that death by murder is an accidental means by which the life was destroyed, that there is then no exception in the condition against it. The argument for the plaintiff proceeds upon the theory that the disputed words, "or intentional injuries inflicted by any person," can properly be held to apply only to "injuries that do not include death," to use the language of learned counsel for the plaintiff. Injury, commonly so called, counsel contends, includes any and all hurt and harm short of death, and this policy so confines the meaning of the word that only bodily injuries short of death, sustained through external, violent, or accidental means, are comprehended within the disputed phrase above quoted. It divides, or rather subdivides, injuries short of death into three classes or divisions, for each of which different indemnities are to be paid: (a) Losses of time, not including loss of one or both hands, feet, or eyes, for each of which a different indemnity is paid; (b) severance or dismemberment,—the loss of one or both hands, feet, or eyes, for each of which a different indemnity is paid; this class of injuries being called "severance or dismemberment"; (c) total disability for two years arising from some injury other than the loss of one or both hands, feet, or eyes, for which a different indemnity is paid. This classification of the argument is taken from the terms of the policy, and is substantially correct; and now the argument proceeds to urge that the language or phraseology of the conditions containing the exceptions must be construed in reference to that classification. Then we come to (d) death resulting from external, violent, and accidental means; this being an entirely independent class of "losses," not at all related to the others, for which also a different indemnity is paid, namely, a life insurance of ten thousand dollars,—the final contention of the argument being that this death loss is not included in the exception of "intentional injuries inflicted by any person," the phrase used in the exception. In other words, the argument is that the exception of "intentional injuries inflicted by any person" must be, by proper construction of the sentence, confined to those injuries which would otherwise be covered by the policy falling short of death.

The argument here is very ingenious and quite persuasive, but I think it is illusory and unsound, and is broken down by the plain, everyday, grammatical arrangement of the sentence. It does not depend upon adjudicated precedents, for no case has been cited on either side deciding the point. The full authority of the cases cited on either side may be conceded, and yet they do not throw even a useful sidelight upon this question, and I shall therefore confine consideration of the subject to the construction of the sentence itself, conceding to the fullest extent the claim that all doubt must be resolved against the company. Undoubtedly, this question would never have been made if the architect of the sentence had anticipated the point we have under consideration, and had proceeded to recon-

struct the sentence to make its meaning more clear in respect of that point. Like most of the sentences in policies of insurance establishing the conditions and exceptions, this sentence is overloaded with an immense cargo of details. With a commendable desire for condensation, the sentence is made to bear schedules of enumeration which very much obscure its meaning, undeniably, and which give occasion for the breeding of lawsuits by just such contentions as we have here. But a little close thought and careful analysis brings out the meaning with sufficient distinctness to satisfy the judicial judgment as to the meaning of the parties in making the contract. It should not be overlooked in construing a contract like this, and a condition like this, and a sentence like this, that the exception was adopted to provide against the very conflict of authority which has been developed by the investigations of counsel in this case. It being doubtful, under the authorities or adjudications of the courts, whether a death by murder was a death by accidental means, if the parties should set to work to agree upon the question whether it should be so considered, they might use much more specific language to express their intention than we find in this policy, and, possibly, under such a writing of the policy, this question would not have arisen; but when the insurance company, being also aware of the wider scope of the question, were desirous of constructing a policy which should provide against any liability for any injuries, whether resulting in death or not, that might come from the intentional assaults of third parties upon the person of the policy holder, they might reasonably be expected to construct a sentence very much like that we have here, although it might even then have been more clearly expressed than in the sentence we have under consideration, which unites with this subject, in the same complex sentence, many others rather widely separated in their analogies. The argument for the plaintiff uses in the simple process of grammatical analysis a very rigid and relentless sort of foot rule, or measuring tape, which has nothing on it except the classifications or subdivisions of injuries made for another purpose in the body of the policy, entirely ignoring the methodical classifications or subdivisions of injuries and liabilities which are contained in the sentence itself, for the different purpose of enumerating exceptions. The body of the policy schedules or enumerates injuries for which the liability exists. Naturally these would be strictly specific in their description, and the word "injury" might be confined as the plaintiff suggests. The body of the condition or exception schedules or enumerates the injuries for which no liability is to exist, and, while the essential connection between the two cannot be denied, they are not essentially wholly interdependent upon each other in the manner insisted upon by plaintiff's counsel. Naturally these schedules would be broadly generic in their description, and the word "injury" might have an enlarged meaning in this place.

Let us analyze the sentence in a simple way, as follows: (1) The insurance under this contract shall not cover (a) disappearances, or (b) injuries, whether fatal or disabling, of which there is no visible mark, etc. (2) Nor cover (a) injuries, (b) dismemberment, (c) dis-

ability, or (d) death sustained (a) while the insured is bereft of reason, sight, etc., (b) or while mining, blasting, wrecking, (c) or employed in the manufacture, sale, transportation, or handling of any explosive compound, (d) or while, or in consequence of, violating the law, (e) or while under the influence of intoxicating drinks or narcotics, or in consequence thereof, (f) or while in any wild or uncivilized countries, (g) or while riding or traveling in any vehicle or conveyance not provided for transportation of passengers; or resulting from or caused, directly or indirectly, wholly or in part, or while so affected, by (a) vertigo, (b) somnambulism, (c) bodily infirmities, (d) deformities, or (e) disease of any kind, (f) gas or (g) poison in any form or manner, (h) contact with poisonous substances, (i) surgical or medical treatment, (j) dueling, (k) fighting, (l) wrestling, (m) war, (n) riot, (o) lifting, (p) overexertion, (q) suicide (sane or insane), (r) sunstroke, (s) freezing, (t) riding or driving races, (u) voluntary exposure to unnecessary danger, or (v) intentional injuries inflicted by any person. Now, by the mere cancellation of the outlying terms of the sentence, we have the exception stated thus: "The insurance under this contract shall not cover * * * death * * * resulting from * * * intentional injuries inflicted by any person." And then we have almost precisely the case of Insurance Co. v. McConkey, 127· U. S. 661, 8 Sup. Ct. 1360, where it was held that under such an exception the policy did not cover a case of murder. It is true that in that policy the exception in its application to a case of death was somewhat more clearly manifested by a structural plan of the sentence, bringing the word "death" more closely in association with the words "intentional injuries inflicted by the insured or any other person." But I think the intention of the parties to exclude a case of death so inflicted is just as clear under this policy as it was under that. Judgment for the defendant. So ordered.