TOM KASCOUTAS et al., Appellants, v. FEDERAL LIFE INSURANCE COMPANY, Appellee.

INSURANCE: Strict Construction of "Death" and "Disability"
1 Clauses. A policy which clearly distinguishes between loss by *"death"* and loss by specified *"disabilities,"* and promises to pay the former to a named beneficiary, and the latter to the insured himself, with a proviso that the policy "does not cover *disability* resulting from intentional injury of the insured, inflicted by himself or any other person, whether fatal or nonfatal," does not exempt the insurer from making payment to the estate of the insured, in case the insured is *murdered* by the beneficiary.

INSURANCE: Murder of Insured by Beneficiary. The statute
2 (Sec. 3386, Code Supp., 1913,) which provides that policies of insurance issued by *benevolent* associations shall be payable to the estate of the insured in those cases where the named beneficiary feloniously takes the life of the insured, simply converts the common-law rule into statute rule, but does not abrogate the common-law rule that, under a like state of facts arising under a *nonbenevolent* policy, the same result must be worked out.

APPEAL AND ERROR: Affirmance Without Prejudice. When it
3  affirmatively appears that plaintiff, as appellant, has a good
ground for reversal, but pins his faith, in his "brief points," to
an untenable ground, the appellate court will *affirm*, but may
do so without prejudice—with permission to amend in the trial
court, or to bring a new action. So held where appellant, seek-
ing to recover as administrator on a *non-benevolent* policy of
insurance, on the ground that the beneficiary had murdered
the insured, contended for reversal on the untenable ground
that Sec. 3386, Code Supp., 1913, was applicable, and demanded
a reversal, when he should have assigned the common-law rule
as the basis for his contention.

*Appeal from Woodbury District Court.*—GEORGE JEPSON,
Judge.

OCTOBER 2, 1920.

THE decedent obtained a policy of insurance in the de-
fendant company. Gus Kascoutas was the beneficiary, if he
survived the insured. He intentionally caused the death of
assured. The appellant administrators contend that this
gives the estate of decedent the proceeds of said policy.
The trial court took the contrary view, and directed verdict
for defendant. Plaintiffs appeal.—*Modified and affirmed.*

*McCormick & McCormick,* for appellants.

*F. H. Free* and *C. A. Atkinson,* for appellee.

SALINGER, J.—I. Grant that public policy forbids that
a beneficiary in a life insurance policy shall receive a bene-
fit from that policy where he murders the insured. But no
public policy condemns an undertaking to
pay insurance to the estate of one insured
who has died from injuries inflicted by the
named beneficiary. We do not understand
appellee to question this proposition, and do
understand its position to be that it is liable to no one be-
cause it has a valid contract that there shall be no liability

1. INSURANCE:
strict con-
struction of
"death" and
"disability"
clauses.

if the death of the insured is caused or results "from intentional injury of the insured inflicted by * * * any other person, whether fatal or nonfatal."

If the policy has such a proviso, it may well be claimed that no question exists here as to what shall be done about the payment of a policy where public policy prohibits the beneficiary from taking, and whether, in such case, payment must be made to the estate of the murdered insured. We may concede that, if there be such agreement as appellee claims, no such questions can arise, because, by contract, payment is due to no one. Decisions too numerous to cite so declare.

The first inquiry, then, is what contract exemptions has the appellee? It has but one, and it is this:

"This policy does not cover disability resulting from intentional injury of the insured, inflicted by himself or any other person (assaults for the purpose of robbery or burglary excepted), whether fatal or nonfatal."

If this proviso does not work total release from liability, then the trial court erred in holding that the estate of the murdered man had no rights, and that the fact that he was intentionally murdered not only destroyed the rights of the named beneficiary, who was the murderer, but as well released from liability to pay to anyone.

Had no beneficiary been named in the policy, then, in the absence of contract exemption, the policy was payable to the estate of the deceased, even though he came to his death through assassination. See *Grand Lodge I. O. M. A. v. Wieting*, 168 Ill. 408. As said, then, a most important question is whether there be a contract which discharges from liability solely because intentional murder caused the death.

### 1-a

Beyond the need of interpretation, there is a proviso that nothing shall be paid on account of *disability* caused by intentional injury by a third person, whether the injury does or fails to result in death. True, the policy does purport to deal with both loss of life and with disability. But

it does not follow that, therefore, the exempting clause deals with anything more than *disability*. And if the only contract exemption is confined to *disability*, caused by intentional injuries, then no contract relieves as to *death* from such injuries. And, as said, no law stands in the way of collecting insurance on the death of a murdered insured, except that, if the murderer be the beneficiary, *he* cannot be the recipient of the payment. We must, then, settle whether the exempting proviso is not limited to *disability* caused by the murder—to what is suffered from the crime during the time in which the victim survives the attack. And here comes into action the elementary rule that, in construing such exceptions, the court will deal strictly with the insurer, who drafted the proviso, and will resolve all doubt in favor of payment.

In various parts of the policy, death and specified disabilities are, in terms, differentiated. There is specific provision as to whom indemnity for loss of life shall be payable in certain contingencies, and in this connection it is said that "all other indemnities are payable to the insured." With this distinction recognized by the insurer, it still, and in terms, limited the proviso to "disability." It may, therefore, well be said that no exemption from payment of death loss was intended. This is strict construction, but is demanded by the law. See *American Acc. Co. v. Carson*, (Ky.) 30 S. W. 879, and *Rosenberry v. Fidelity & Cas. Co.*, 14 Ind. App. 625 (43 N. E. 317). The contract, construed in entirety, can work such a distinction and justify such a construction. *Allen v. Travelers Prot. Assn.*, 163 Iowa 217. This is recognized in *Brown v. United States Cas. Co.*, (Tenn.) 88 Fed. 38, at 42. But in that case, the proviso exempts "from the result of intentional injuries," and the decision is that such wording cannot be construed to mean that the exemption is limited to harm from the injuries short of death. In *Burnett v. Railway O. & E. Acc. Assn.*, 107 Tenn. 185 (64 S. W. 18), an indemnity policy indemnified against physical injury resulting in disabilities described (up to a certain number of weeks), and provided

further that death should immediately terminate liability. There was no express provision as to death and payment therefor, and it is held the policy did not insure against death. The text in 1 Corpus Juris 466 declares that:

"A provision for the payment of a weekly indemnity during the period of total disability refers to the condition of a living person, and no recovery can be had thereunder for the death of the insured."

And see *Brown v. United States Cas. Co.,* (Calif.) 95 Fed. 935. And our statute (Section 3386, Code Supplement, 1913,) makes a distinction in terms between death and disability, by specifically speaking of both. It first deals with cases where life is taken, and declares that no beneficiary in a policy payable on death or disability, or who procures life to be taken or procures a disability, shall take the proceeds of the policy; next, that all benefits accruing to such beneficiary, either on death or disability, shall either become subject to distribution among the other heirs; or, if it be a case of causing disability merely, the benefits shall be paid to the disabled person.

II. The statute, Section 3386, Code Supplement, 1913, provides for a reverter to the estate of decedent, if he be murdered by the designated beneficiary. Such reversion is upheld in *Schmidt v. Northern Life Assn.,* 112 Iowa 41. In that case, it is declared: "The wife (murderess and designated beneficiary) cannot recover, because it is contrary to public policy to allow her to enforce the claim. But this rule of public policy ought not to be extended so as to defeat all claims on the policy."

2. INSURANCE: murder of insured by beneficiary.

It is further said that, though public policy prevents recovery by the wife, the interest in the benefits to which the assured was entitled from the association was not destroyed. It expressly approved *Cleaver v. Mutual R. F. L. Assn.,* 1 Q. B. Div. (1892) 147. There it was held that, notwithstanding the wife murdered her husband, and was named as a beneficiary in his certificate, and though she could not recover, still the insurance money formed a part

of the husband's estate, and could be recovered by his administrator.

## 2-a

We do not understand that appellee challenges the rule formulated by what has just been said. What it does do, is to urge an avoidance.

It is the fact that the *Schmidt* case is but an application of said statute provision. And the statute deals with none but policies of insurance and certificates of membership issued by "benevolent associations or organizations." It is not shown that appellee is such association or organization, and, on the contrary, it is indicated that appellee is a commercial enterprise. But, for the purposes of the point now to be considered, it suffices that there is failure of proof as to the nature of defendant's structure.

Upon these premises, appellee makes the counter point that the statute does not apply because the policy sued upon was not the certificate of a benevolent association or organization, as contemplated in Section 3386, Code Supplement, 1913.

The statute reference to benevolent associations is not a casual one. It intends to recognize that equitable considerations enter into requiring a reverter, in the case of a certificate issued by a benevolent organization. It is pointed out in *Schmidt v. Northern Life Assn.*, 112 Iowa 41, that designating the beneficiary in such a certificate is an act revocable at the pleasure of the insured member; that, therefore, no beneficiary can have a vested interest until the insured dies; that sentence of life imprisonment is not generally recognized in this country to create civil death; that, therefore, all the named beneficiary has, while insured lives, is a mere expectancy; that if, for any reason, such beneficiary cannot take at the death, equity creates the condition of unenforcible trust, or lapse of legacy,— equal to a case of no beneficiary's having been named,—and the trust fund goes to those who would take, had no beneficiary been designated (citing *Rindge v. New England M. A. Soc.*, 146· Mass. 286 [15 N. E. 628], and *Newman v.*

*Covenant Mut. Ins. Assn.*, 76 Iowa 61). Again, the *Schmidt* case grounds itself on the doctrine that, in the case of felonious killing by the named beneficiary in the certificate of a benevolent association, there exists a fund created by the payments made by the insured for the benefit of himself and others in his class, and that, if such trust fails, a resulting trust arises in favor of him who made such payments, or of his estate. In this, it is squarely supported by 1 Bacon on Benefit Societies (2d Ed.), Sec. 243 a, and *Bancroft v. Russell*, 157 Mass. 47 (31 N. E. 710).

### 2-b

Clearly, then, Section 3386, Code Supplement, 1913, controls nothing but policies issued by an association named in the statute. Defendant is not shown to be such association. Therefore, the *statute* gives plaintiffs no right to recover. And, if the statute is exclusive,—if it amounts to a declaration that there shall be no reverter to the estate unless the certificate is that of a benevolent association,—then plaintiffs may not recover in any form of action. We are of opinion the statute is not exclusive; that it does no more than single out and emphasize as to certificates of benevolent associations, and make rules as to reverter on such.

III. But does it follow there must be a reversal? An appellant may have good grounds for reversal, and fail because he presents none but untenable ones. In other words, the presentation may lose an appeal. We shall not cite cases for the proposition that appellant must stand or fall by his "brief points." He has but one on the vital point. It is this:

3. APPEAL AND ERROR: affirmance without prejudice.

"Administrators can recover on a policy where the beneficiary has become disqualified from receiving under policy. Section 3386, Code Supplement, 1913. *Schmidt v. Northern Life Assn.*, 112 Iowa 41." In the argument *in extenso*, this "point" is interpreted by quoting said statute, to establish the basis for recovery. We have said that the statute gives no right to recover. That position is one of the grounds

of the sustained motion to direct verdict for defendant. As the court rightly sustained this one ground, it is immaterial now whether it erred in sustaining any or all of the others. It follows there must be an affirmance. But it is without prejudice to amending on remand by asserting a right to recover not based on said statute, or bringing new suit not based on said statute. We hold that the judgment appealed from should be deemed not in bar but in abatement; wherefore, we modify and affirm at cost of appellant.—*Modified and affirmed.*

WEAVER, C. J., EVANS and PRESTON, JJ., concur.