## Clara K. Henninger, Appellee, v. Inter-Ocean Casualty Company, Appellant.

1. DEATH, § 8*—*death certificate as evidence.* The provision of Rev. St. ch. 111½, sec. 20 [Callaghan's 1916 Stat. ¶ 10616(20)] making a death certificate prima facie evidence of the facts therein stated, does not make such a certificate prima facie evidence of mere conclusions based upon hearsay.

2. INSURANCE, § 667*—*what evidence is insufficient to show cause of death.* In an action to recover on a health and accident policy, a statement in the death certificate that the abrasion from which the septicemia causing the death of insured started was caused by a garter buckle is properly excluded as a conclusion of the physician making the certificate, especially in view of the fact that there is no evidence in the record that insured ever wore garters or that the abrasion was located where it might naturally have been caused by the rubbing of a garter buckle.

3. INSURANCE, § 601*—*when presumption as to cause of death is available.* In an action to recover on an accident and health policy, proofs which merely tend to show that insured died from septicemia, that the germs causing septicemia must enter through an abrasion of the tissues and that insured had a red spot on the calf of his right leg, are not sufficient to warrant a finding for plaintiff requiring presumptions that insured received an external injury to his right leg causing an abrasion and that the injury causing the abrasion was involuntary, accidental and caused by violent means.

4. EVIDENCE, § 23*—*what presumption may be based on.* A presumption cannot be based on a presumption.

5. EVIDENCE, § 466*—*when circumstantial evidence is sufficient.* When circumstantial evidence is relied upon to prove a fact, the circumstances must be proven and not themselves presumed.

Appeal from the Circuit Court of McLean county; the Hon. SAIN WELTY, Judge, presiding. Heard in this court at the October term, 1919. Reversed and remanded. Opinion filed April 27, 1920.

ALLEN, HUMPHREY & CONVERSE, for appellant; WIGHT & ALEXANDER, of counsel.

JESSE E. HOFFMAN, for appellee.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number,

MR. JUSTICE ELDREDGE delivered the opinion of the court.

This is an appeal from a judgment rendered in an action of assumpsit in favor of appellee for the sum of $3,750. The suit was brought to recover upon a combination accident and health insurance policy, originally issued by the Woodmen's Casualty Company which subsequently changed its name to Inter-Ocean Casualty Company. The insured was J. W. Henninger and the beneficiary is Clara Henninger, his wife and appellee. The declaration sets out the terms of the policy and the parts thereof material to the issues here involved are as follows:

"(A)  If the insured shall, within ninety days after the accident, sustain any of the following total losses, resulting from bodily injuries which are the direct and proximate result of, and are caused solely and exclusively by external, violent, accidental and involuntary means, while this policy is in full force and effect, the Company will pay to the insured as follows, in lieu of all other benefits or in the event of the insured's death, to Clara K. Henninger (his wife) his beneficiary, if surviving, otherwise to the legal representatives of the insured."

"Boils, Felons, etc. Disability resulting wholly or in part from boils, felons, abscesses, carbuncles, ulcers, blood poison, sunstroke and freezing, from any cause, shall be paid for as sickness under Paragraph (H) entitled 'Sick Benefits.' The original cause thereof notwithstanding."

It is averred in the declaration that the insured on July 20, 1918, received an accidental scratch, cut or abrasion of the skin in one of his lower limbs from which blood poison resulted, causing his death on July 25, 1918, as the direct result of said injury.

Appellant introduced no evidence and the following is the substance of the proofs introduced by appellee to maintain her action. Theodore Kemp testified that on July 17 he made a friendly visit to the home of

the deceased and the latter showed him his right leg, on which there were some kind of red spots on the inside of the calf about 4 or 5 inches below the knee; that the skin did not appear to be broken and was not bleeding but was very red and angry; that there was no scab on it and the spot was about the size of the end of the thumb and there were some little splotches of red above and extending upwards 3 or 4 inches; that he did not notice the leg being swollen.

C. F. Calloway, the undertaker and embalmer who examined the body of the deceased preparatory to embalming it, testified that there was an abrasion below the knee of the right leg on the inner side of the shin bone about 5 or 6 inches below the knee joint but it was not sufficient to cause any leakage of the embalming fluid; that he gave the body a very thorough examination to see if there were any breaks in the skin which would permit the embalming fluid to leak out but there were no such breaks; that there was no cut, it was an abrasion; that there was a dry scab formation about half or three-quarters of an inch in diameter; by an abrasion he meant a break in the skin, not necessarily a break, but an irritation.

Dr. Edson Hart testified that he had been called in consultation with the attending physician, Dr. Yolton, and found the deceased suffering from infection; that he made an examination for appendicitis and concluded that the patient did not have that disease; that he found an infection of the right leg localized above the knee and advised Dr. Yolton to open the leg, which he did and found a small amount of pus for which drainage was inserted; that infection had started at some point below and was carried up the lymphatics and came close to the surface above the knee; that the whole leg was swollen; that he did not make any definite examination to see where it started because the trouble was above the knee at that time; that he saw deceased again the day he died and at that time the

abdomen was distended, the skin cold and clammy and there was no perspiration; that he advised calling in Dr. Chapin, who said an operation would not do any good at that time; that in his own opinion deceased died from streptococcus infection started below the knee, and which is ordinarily known as blood poison; that the skin must be broken at some point before the germs can enter the system; that Dr. Chapin expressed an opinion that deceased had appendicitis as a result of the bursting of the appendix.

Dr. Bryan testified that he was a brother-in-law of appellee and came to her home shortly after the death of the deceased to attend the funeral; that the question had been raised whether the deceased might have been afflicted with appendicitis and, if so, whether his life might have been saved if he had been operated on and he decided to make a post-mortem examination to determine whether the deceased had died from that disease; that he made the autopsy after the deceased had been embalmed for 24 hours; that it was made in the presence of Dr. Yolton and the undertaker and a nurse, Miss Eberheardt; that he removed the appendix, which was in a normal condition; that after finding that the deceased did not have appendicitis he did not operate further.

Lulu Eberheardt, a professional nurse, testified that she was present at the autopsy and saw the appendix after it had been removed and that it appeared to be perfectly normal.

Dr. Yolton and Dr. Chapin did not testify. The undertaker, Calloway, corroborated Dr. Bryan and the nurse in the fact that the appendix was in a normal condition. The above is a summary of all the oral testimony given, and the only other evidence in addition thereto was a certified copy of death signed by Dr. Yolton. Part of the certificate is as follows:

"The cause of death was as follows:

Septicemia (started in Rt. leg from abrasion of

skin) (made by garter buckle July 12), chill July 17.
........(Duration) ......Yrs......Mos. ......6ds.
Contributory (Secondary) General Peritonitis.
about
Duration......Yrs......Mos......3 ds.

The words "made by garter buckle July 12" were not admitted in evidence on objection thereto by appellant. No cross-error has been assigned by appellee to the action of the court in excluding these words from the certificate and appellee cannot now insist that there was any error therein. While section 20, ch. 111½, Rev. St. [Callaghan's 1916 Stat. ¶ 10616(20)] provides that such a certificate shall be prima facie evidence of the facts therein stated, it does not make such a certificate prima facie evidence of mere conclusions based upon hearsay. It will be readily perceived that such a construction of the statute would lead to most dangerous and hazardous consequences. Even if the physician had received his information from the insured, the statement would not have been competent. *Globe Accident Ins. Co. v. Gerisch,* 163 Ill. 625. There is no evidence in the record that the insured in his lifetime wore garters with buckles on them, or garters at all, nor any proof that the sore was in a location where it might naturally be caused by the rubbing of a garter buckle. Even if such proofs had been made, they would not have made the above conclusion of the physician in the certificate competent. This phrase in the certificate was properly excluded. The theory of counsel for appellee is that because the testimony of Dr. Hart shows that the skin must be broken at some point before the germs causing septicemia or blood poison can enter the system, an external injury is proven, and, therefore, the presumption of law is that it was violent, involuntary and accidental. The falacy of this reason is that there is no direct evidence of an external injury causing the breaking of the skin, and an abrasion

of the skin may be produced by means other than external injury. It is established by medical authority that an abrasion of the skin may not only be caused by external force but also by means of chemical action or by a disease process, in other words, an abrasion of the skin may be purely pathological and the result of some disease such as eczema or from a pimple, boil, rash, heat or sunburn. The proofs induced only tend to show three facts in regard to the cause of the death of the insured: First, that the insured died from blood poison or septicemia; second, that the germs which caused this disease must enter the body through an abrasion of some of the tissues; third, that the insured had a red spot on the calf of his right leg. From these facts we are asked to presume, first, that the insured received an external injury to the right leg, which caused an abrasion of the skin, and, second, that such an injury was involuntary, accidental and caused by violent means. In order to sustain a cause of action in this case it would be necessary to presume the existence of every material fact as to the cause of the death of the insured necessary to establish appellee's claim under the terms of the policy. A presumption cannot be based upon a presumption, and whenever circumstantial evidence is relied upon to prove a fact, the circumstances must be proved, and not themselves presumed. *Globe Accident Ins. Co. v. Gerisch*, 163 Ill. 625; *Ohio Building Safety Vault Co. v. Industrial Board*, 277 Ill. 96, 14 N. C. C. A. 224. In the latter case the court said: "It cannot be said that the existence of a certain fact may reasonably be inferred from the evidence when the existence of another fact inconsistent with the first can be from the same evidence inferred with equal certainty. A theory cannot be said to be established by circumstantial evidence unless the facts relied on are of such a nature and are so related to

each other that it is the only conclusion that can reasonably be drawn from them.''

The judgment of the circuit court is reversed and the cause remanded.

*Reversed and remanded.*