MOZELLE E. DICKEY, Respondent, v. THE SU-
PREME TRIBE OF BEN HUR, Appellant.*

In the Springfield Court of Appeals. Opinion filed March 6, 1925.

1. **EVIDENCE: Insurance: Proof of Death: Statement in Proof of
   Death Overcome by Parol Testimony.** In action on benefit certif-
   icate, binding force of statement of beneficiary in proof of death,
   stating insured committed suicide, *held* taken away by oral ex-
   planation of beneficiary that she had no personal knowledge as to
   how insured met death, but gave the cause of death as suicide
   in reliance on statements of attending physician.

2. ———: ———: ———: **Admissions: All Statements Included in
   Proofs of Death Admissible in Evidence against Beneficiary as Ad-
   missions.** Rule is well established that all statements and affidavits
   included in the proofs of death which may be furnished by the bene-
   ficiary in a life insurance policy to the insurer are admissible in
   evidence against such beneficiary as admissions of the truth of the
   statements therein contained.

3. ———: ———: **Shipments: Purchaser's Right to Inspect Shipments.
   Foundation for Admission of Affidavit Furnished by Plaintiff.** In
   action on benefit certificate, where defendant insurer introduced
   in evidence second affidavit of attending physician, furnished after
   submission of original proof of death, in relation to death of in-
   sured, such affidavit, if procured by beneficiary and furnished de-.
   fendant in compliance with its rules regarding an additional af-

(281)

Dickey v. Ben Hur.

fidavit in such cases, would have been admissible as admission against beneficiary, but it was the duty of defendant to lay a proper foundation for the introduction of such evidence by making at least prima-facie proof that the affidavit was furnished by plaintiff.

4. **APPEAL AND ERROR**: Practice: Exclusion of Affidavit Justified, in View of Testimony of Affiant at Trial. In action on benefit certificate, trial court was justified in excluding affidavit of attending physician offered in evidence by insurer as to cause of death of insured, where record disclosed that physician testified fully at trial on behalf of appellant insurer, as to his understanding of the cause of death of insured.

5. **EVIDENCE**: Interpreters: Conversations Through Interpreter Admissible, if Such Mode of Communication Adopted. Conversation through medium of an interpreter, if such method of communication is adopted, may properly become testimony in a case.

6. ———: Hearsay: Evidence Held Inadmissible, as Hearsay, and Not Spoken Through Medium of Interpreter. In action on benefit certificate, testimony of physician attending deceased as to what some unidentified person in physician's presence said deceased replied, in inarticulate manner, to physician's question as to what she had taken that caused her death, *held* properly excluded as hearsay, in the absence of a showing that deceased adopted the interpretation of the person attempting to interpret what she said.

---

*Headnotes 1. Evidence, 22 C. J., Section 507; 2. Evidence, 22 C. J., Section 344; 3. Evidence, 22 C. J., Section 493; 4. Appeal and Error, 4 C. J., Section 3000; 5. Evidence, 22 C. J., Section 335; 6. Evidence, 22 C. J., Sections 174, 356 (Anno).

Appeal from the Circuit Court of Dunklin County.—*Hon. W. S. C. Walker*, Judge.

AFFIRMED.

*Hugh B. Pankey* and *Hal H. McHaney*, both of Kennett, for appellant.

(1) The court erred in not sustaining appellant's instruction No. 1, which was in the nature of a demurrer offered at the close of all the evidence. The beneficiary admitted she signed the affidavits in which she stated

the insured committed suicide and all the facts were consistent with that theory of the case. Newlands v. Modern Woodmen of America, 168 Mo. App. 311, 153 S. W. 1097; Richey v. Woodmen of the World, 163 Mo. App. 235, 146 S. W. 461; Prentiss v. Illinois Life Ins. Co. (Mo. Sup.), 225 S. W. 695; Dickey v. Supreme Tribe of Ben Hur, 253 S. W. 417; Bilderback v. Security Benefit Assn., 257 S. W. 176; Almond v. Modern Woodmen of the World, 133 Mo. App. 382, 113 S. W. 695; Castens v. Supreme Lodge of Knights and Ladies of Honor, 175 S. W. 264; Grohmann v. The Maccabees, 237 S. W. 875. (2) The court erred in excluding the affidavit of Dr. W. L. Gossage as to the cause of death which was a part of the proof of death required under the terms of the policy sued on. Stephens v. Metropolitan Life Ins. Co., 176 S. W. 253; Hicks v. Metropolitan Life Ins. Co., 196 Mo. App. 162, 190 S. W. 661; Whiteside v. Court of Honor (Mo. App.), 231 S. W. 1026; Grohmann v. Maccabees (Mo. App.), 237 S. W. 875; Castens v. Supreme Lodge, etc. (Mo. App.), 175 S. W. 264. (3) The court erred in excluding testimony of Dr. W. L. Gossage who attended deceased in her last illness relative to statements she made to him concerning what she had taken; said statements being interpreted by someone standing nearby and the insured, the deceased, indicating that the interpretation was correct and being against her interest. Stewart v. Glenn, 58 Mo. 482; Wagner v. Binder (Mo. App.) 187 S. W. 1128; Grafeman Dairy Co. v. Northwestern Bank, 235 S. W. 435; Pursifull v. Pursifull, 257 S. W. 117; State v. Weldon, 39 S. C. 318, 17 S. E. 688, 24 L. R. A. 126; Snyder v. Nations (Ind.), 5 Blackf. 295; State v. Butler, 157 Iowa 163, 138 N. W. 383; Ritchey v. People, 23 Colo. 314, 47 Pac. 272. (a) Admission of decedents against interest are admissible in evidence. Stewart v. Glenn, 58 Mo. 482; Wagner v. Binder (Mo. App.) 187 S. W. 1128; Grafeman Dairy Co. v. Northwestern Bank, 235 S. W. 435; Pursifull v. Pursifull, 257 S. W. 117. (b) The fact that deceased could

not talk distinctly should not disqualify her admission when she indicated by her conduct, which was understandable, what she meant. State v. Weldon, 39 S. C. 318, 17 S. E. 688, 24 L. R. A. 126; Snyder v. Nations (Ind.), 5 Blackf. 295; State v. Butler, 157 Iowa, 163, 138 N. W. 383; Ritchey v. People, 23 Colo. 314, 47 Pac. 272.

*Smith & Zimmerman,* of Kennett, for respondent.

(1)  The court did not err in refusing appellant's instruction No. 1, which was in the nature of a demurrer. Plaintiff explained that in making the proof of death giving "suicide" as the cause of death, that she relied upon the statements of the doctors who attended the deceased, and not upon her own knowledge of how the death occurred. She testified that she had no knowledge of any facts that would show that the deceased had committed suicide. This explanation on her part took out the binding force of the statement in the death proof and left the question open to be determined on the facts developed at the trial. Dickey v. Supreme T. B. H., 253 S. W. 418; Bamberge v. Supreme T. B. H., 159 Mo. App. 102; Bennett v. Standard Ins. Co., 209 Mo. App. 81; Parker v. Aetna Life Ins. Co., 289 Mo. 42; Tuepker v. W. O. W., 226 S. W. 1005; Castens v. Supreme Lodge, 190 Mo. App. 57. (2)  The court did not err in excluding the affidavit of Doctor W. L. Gossage, for the following reasons:  (a)  Because said affidavit excluded was made at the instance of appellant, on the 27th day of May, 1922, long after the proof of death had been submitted, and was no part of the proofs of death made by respondent.  (b)  Because appellant offered Doctor Gossage as a witness in its behalf, and his affidavit, solicited by appellant, about matters concerning which he had personal knowledge was not proper or competent evidence, being an *ex parte* statement made in the absence of respondent and without notice.  (c)  Because it was improper for appellant to contradict the testimony

of Doctor Gossage, whom it offered as a witness and who testified of his personal knowledge of the facts in the case, by an affidavit made by Doctor Gossage at appellant's instance and request. Peycke Bros. Com. Co. v. Sandstone Co., 195 Mo. App. 421; 2 C. J. P. 373, sec. 140; Ulman v. U. P. Ry., 211 S. W. 911; Hancock v. Whybark, 66 Mo. 672; Patterson v. Tagan, 38 Mo. 70. (d) Because the court admitted the affidavit of Doctor Gossage which was a part of the proofs of death, identified as defendant's Exhibit "D." (3) The court did not err in excluding testimony of Doctor W. L. Gossage relative to statements by deceased concerning what she had taken, said statements being interpreted by some other person standing nearby, not in the presence of respondent. The plaintiff could not be bound by somebody's interpretation of the answer made by the deceased, and the testimony excluded was some person's other than Doctor Gossage's interpretation placed upon which the deceased was saying. Such testimony would be hearsay evidence, and wholly incompetent. Bross v. Rogers, 187 S. W. 39; Gibony v. Foster, 130 S. W. 324; Atkinson v. School of Osteopathy, 240 Mo. 355; State v. Hyde, 234 Mo. 254.

BAILEY, J.—This law suit is founded on a benefit certificate issued by appellant and in which respondent is named as beneficiary. In a trial by jury, verdict was for plaintiff for the full amount of the policy and interest and defendant appealed. This case is before this court for the second time, having been reversed and remanded on a previous appeal by defendant for error in one of plaintiff's instructions. [253 S. W. 417.]

The Supreme Tribe of Ben Hur is admittedly a fraternal beneficiary association duly organized and incorporated under the laws of Indiana, and as such was licensed by the State of Missouri, to do business in this State. Plaintiff in her petition alleged that defendant, on or about March 17, 1919, issued to Lucy E. Walker,

deceased, its benefit certificate of insurance in the sum of one thousand dollars ($1000); that plaintiff, a daughter of the insured, is the beneficiary in said certificate; that Lucy E. Walker died April 10, 1922; that plaintiff furnished all proofs of death required and prays judgment for the full amount of the policy. Defendant, as a defense, pleaded that insured committed suicide within five years and over three years after the issuance of the certificate and under the terms thereof, was entitled to one fifth the amount of the certificate, a proper tender of which amount was made. A further defense that the policy was void when issued seems to have been abandoned.

In the assignment of errors appellant urges first, that its demurrer to the evidence should have been sustained because plaintiff admitted she signed the affidavit (in the proof of death submitted by her) in which she stated insured committed suicide. This particular point was raised on the former appeal of this case and under the same pleadings and almost identically the same state of facts, we held the binding force of the statement in the death proofs was taken away by plaintiff's explanation of the circumstances under which she signed such statement. [Dickey v. Supreme Tribe of Ben Hur, 253 S. W. 417.]

Plaintiff had no personal knowledge as to how the insured met her death; she explained that she gave the cause of death as "suicide" in the proofs of death submitted by her, because she relied on a statement of the attending physician, Dr. Gossage, that it would make no difference and the company would have to pay anyway. In this, she is corroborated by Dr. Gossage. We find nothing in the record which would justify this court in changing its former opinion on this point, and therefore, hold against appellant on its first assignment of error.

Appellant strongly urges as a second assignment of error, that the court erred in excluding the affidavit of Dr. W. L. Gossage as to the cause of death. There were two

affidavits made by Dr. Gossage in relation to the death of the insured. The first affidavit was included in the original proofs of death submitted by plaintiff and bears date April 22, 1922; all the original proofs of death, including this particular affidavit, were admitted in evidence. The second affidavit above referred to, was made by Dr. Gossage on the 27th day of May, 1922. The action of the trial court in excluding the latter affidavit is the alleged error of which appellant complains. The rule is well established that all statements and affidavits included in the proofs of death which may be furnished by the beneficiary in a life insurance policy to the insurer, are admissible in evidence against such beneficiary as admissions of the truth of the statements therein contained. [Stephens v. Metropolitan Life Insurance Co. (Mo. App.), 176 S. W. 253; Hicks v. Metropolitan Life Insurance Co., 196 Mo. App. 162, 190 S. W. 661; Beard v. Royal Neighbors, 53 Ore. 102, 19 L. R. A. (N. S.) 798.]

The affidavit in question was evidently not a part of the original proofs of death furnished by plaintiff to the defendant society, as it was made five weeks later and not offered in evidence with the original proofs of death. This circumstance, however, would afford no reason for excluding the affidavit if, in fact, the second affidavit made by the doctor was procured by plaintiff and furnished the defendant society, in compliance with its rules requiring an additional affidavit in all cases of a sudden death. It would then become as much a part of the proofs of death furnished by plaintiff as any affidavit or statement contained in the first proofs procured at an earlier date, and therefore admissible in evidence against plaintiff as an admission of the facts therein set forth. But a careful reading of the record does not disclose whether this particular affidavit was furnished by plaintiff or procured by defendant. It was the duty of defendant to lay a proper foundation for the introduction of such evidence by making at least prima-facie

proof that the affidavit was furnished by plaintiff. [Enyeart v. Peterson, 184 Mo. App. 519, 170 S. W. 458.]

The record further discloses that Dr. Gossage testified fully on behalf of appellant as to his understanding of the cause of death of the insured. Under such state of facts, we find the trial court justified in excluding the affidavit offered in evidence.

Appellant further assigns as error the action of the trial court in excluding testimony of W. L. Gossage, who attended the insured, Lucy E. Walker, deceased, in her last illness, relative to statements she made to him concerning what she had taken, causing her death, which statements were "interpreted" by someone standing nearby. On this point, Dr. Gossage, in the absence of the jury, made the following statement in response to a question by appellant's attorney. "I asked what she had taken, and I couldn't understand what she said; it seemed she was trying to talk, and some member of the family, I suppose it was, I don't know, said that she said 'Merry War Lye,' that's my recollection." He further stated that he thought Mrs. Dickey (the plaintiff), was present, but was not positive and that he did not know who made the remark. We are unable to find any statement in the testimony to the effect that the deceased. Mrs. Walker, indicated by nod, sign or otherwise, that such interpretation of what she may have said or tried to say, in reply to the doctor's question was correct.

Appellant urges that this evidence is admissible as a statement made by decedent against her interest. If such testimony could be accepted as a statement made by deceased, such contention would be tenable. But we believe the testimony as offered was purely hearsay. It is true, a conversation between two persons may be carried on through the medium of an interpreter, and if such mode of communication is adopted it may properly become testimony in the case. "Either party, or a third person, who hears the conversation, may testify to it as he understands it, although for his understanding

of what was said by one of the parties he is dependent on the interpretation, which was a part of the conversation. The fact that the conversation was had through an interpreter affects the weight, but not the competency, of the evidence.''

[22 C. J. 301; 10 R. C. L. 930; Com. v. Vose, 157 Mass. 393, 32 N. E. 355.]

In Miller v. Lathrop, 50 Minn. 91, 52 N. W. 274, the rule is thus stated: ''When two persons voluntarily agree upon a third to act as interpreter between them, the latter is to be regarded as the agent of each to translate and communicate what he says to the other, so that such other has a right to rely upon the communication so made to him.''

All the authorities on this proposition seem to hold a conversation carried on through the medium of an interpreter may be related in evidence only when such method of conversing was, in some manner, voluntarily adopted by the parties. It could hardly be said that one, at the very point of death, had adopted the interpretation of some person standing nearby as to what she may have said so inarticulately that the physician, who had propounded the question she possibly was attempting to answer, was unable to understand. We believe the testimony of the physician as to what some person, unidentified, said the deceased said in reply to his question, was purely hearsay and properly excluded.

Perceiving no error, the judgment is affirmed.

All concur.