## Steve Ziolkowski, Appellee, v. Continental Casualty Company, Appellant.

### Gen. No. 34,919.

Opinion filed October 9, 1931. Rehearing denied October 21, 1931.

GEORGE C. BLISS, for appellant.

PEDEN, KAHN & MURPHY, for appellee; JOHN C. MELANIPHY and GERALD RYAN, of counsel.

MR. JUSTICE SCANLAN delivered the opinion of the court.

This is a suit in assumpsit brought by the plaintiff, Steve Ziolkowski, as beneficiary under an accident insurance policy issued by the defendant, Continental Casualty Company, a corporation, to one Joseph Sarnouski. The case was tried by the court, without a jury, and the issues were found for the plaintiff and damages were assessed in the sum of $2,470. Judgment was entered on the finding and the defendant has appealed.

The declaration, consisting of one count, contained a copy of the contract of insurance. The defendant filed

a plea of the general issue and two special pleas, the first special plea alleging "that the injury causing the loss of life of insured resulted from an intentional act of insured or some other person"; and the second special plea alleging "that the injury causing the loss of life of insured resulted from an intentional act of another person, to-wit, a stab wound, which assault was not committed upon the assured by such other person for the sole purpose of burglary or robbery and which assault was not incurred by insured while engaged in the proper performance of the duties of his occupation and provoked solely thereby," etc. The plaintiff filed replications to the two special pleas.

The part of the policy upon which the defendant relies for its defense reads as follows: "PART V. NOT COVERED. This policy does not cover any loss . . . (3) if the injury causing it results from the intentional act of the Insured or of any other person excepting, however, assaults committed upon the Insured for the sole purpose of burglary or robbery and also excepting assaults incurred by the Insured while engaged in the proper performance of the duties of his occupation and provoked solely thereby; . . ."

Upon the trial the following stipulation of facts, signed by the parties, was offered in evidence:

"It is hereby stipulated by and between the parties hereto, . . .

"1. That Joseph Sarnowski was issued a policy of insurance (attached hereto and made a part hereof as Plaintiff's Exhibit 1), wherein the defendant promised to pay to the beneficiary, the plaintiff herein, (who is a cousin of said assured) the sum of $2,400 for loss of life, as provided in said policy of insurance.

"2. That the said Joseph Sarnowski did, during his lifetime, keep, perform and comply with all the terms, provisions and conditions of said policy of insurance upon his part to be kept and performed by

the terms thereof, including the payments of premiums as required by said policy.

"3. That on Sunday, February 23, 1930, at about 11:45 p. m., the insured, Joseph Sarnowski, and one Peter Kulik were walking north on Burley Avenue in Chicago, Illinois, on the east side of the street; that there were three Mexicans ahead of them; that as insured and Kulik were passing these Mexicans, they gave Kulik a shove off the sidewalk; that Kulik was stabbed in the stomach and Sarnowski was stabbed by one of the Mexicans by means of a knife or some sharp instrument on the left side of chest at point of the heart; that he fell to the street, was taken to the South Chicago Hospital, where he died three hours later from shock and hemorrhages resulting from said stab wound of the heart due to external violence inflicted by said knife or sharp instrument; that neither the insured, Sarnowski, nor Kulik knew the Mexicans who attacked them.

"4. That notice of and proofs of death were given the defendant, as provided by said policy of insurance.

"5. That at about 9 p. m. on the same evening that insured was stabbed there had been an altercation between several Mexicans and white people of Polish extraction in the vicinity of 84th Street and Mackinaw Avenue, which is one block east of Burley Avenue; that Sarnowski and Kulik were of Polish extraction.

"6. That in the event plaintiff is entitled to recover, there is due him the sum of $2,400 with interest from April 23, 1930, at the rate of 5 per cent per annum.

"7. It is further stipulated and agreed that either party may offer additional evidence on the trial of said cause."

The plaintiff also offered in evidence, without objection, the contract of insurance and the following

letter, sent to plaintiff's attorneys by the defendant company:

"Continental Casualty Company
General Office 910 S. Michigan Ave.
Claim Department                    Chicago April 25, 1930
  In replying refer to No.          1602436
                                    Joseph Sarnouski,
                                    deceased
                                    -27-

Messrs. Peden, Kahn & Murphy,
Attorneys at Law,
City Hall Square Bldg.,
Chicago, Ill.

Gentlemen:

This Company is in receipt of your letter of the 12th instant, in relation to claim of above name and number in which you advise you represent the beneficiary.

According to all the evidence submitted in the case claim is not within the policy coverage being excluded therefrom by Part V, and it is our understanding the parties at interest have already been so advised by our agent.

Yours very truly,
R. I. Betty
RIB.EK                              CHIEF ADJUSTER."

The plaintiff then rested. The defendant offered in evidence an affidavit of one Peter Kulik, which was part of the proof submitted to the defendant by the plaintiff in support of his claim. The court sustained the plaintiff's objection to the admission of this affidavit. We will later refer to this offered evidence. The defendant then offered in evidence a certified copy of the death certificate, issued by the coroner of Cook county, in the matter of the death of Joseph Sarnowski. The certificate, save as to a certain portion of the same,

was admitted. We will later refer to this ruling. The defendant then rested and no further proof was offered.

The defendant contends that "by filing the replication to the second plea after the demurrer was overruled, plaintiff admitted the plea to be good at law and raised an issue solely on the facts alleged." In support of this contention the defendant has made a somewhat strained argument as to the effect of the filing of the replication, by the plaintiff, to the first special plea of the defendant. As to this contention, it is sufficient to say that in view of the manner in which the case was presented to the trial court the contention is without merit. By its letter of April 25, 1930, the defendant rejected the claim of the plaintiff upon the sole ground that the "claim is not within the policy coverage being excluded therefrom by Part V." At the close of the evidence the trial court stated that it was his understanding that the defendant was relying upon the provisions of Part V of the policy in defense of the claim, and the defendant not only did not challenge the correctness of this statement but its counsel conceded, by his attitude, that the court was correct in his understanding of the position of the defendant. The point now raised was not made, nor even suggested, during the trial. The agreed facts support the contention of the plaintiff that the case was to be determined by the trial court upon the sole question as to whether or not the claim was excluded by the provisions of Part V. The instant contention is plainly an afterthought, and the defendant will not be allowed to change its position in this court.

The defendant contends that "the court erred in refusing to admit in evidence Defendant's Exhibit 1 for identification." Defendant's exhibit 1 for identification was the affidavit of Peter Kulik, which appears to have been part of the proofs of death submitted to the defendant by the beneficiary. The affidavit reads as follows:

"1602436 Joseph Sarnouski
Affidavit of Eye Witness
In relation to death of Joseph Sarnowski

1. What is your name? Peter Kulik Occupation? Truck Driver

2. Were you an actual eye witness to the injury claimed to have been received by Deceased? Yes

. . .

4. Where were you at the time? With Joseph Sarnowski

5. What was Deceased doing when injured? Going home .

6. How far were you from him? Side by side

7. Where did the accident happen? 8401 Burley Ave.
   a. How did the accident happen? Going in back of 3 Mexicans and trying to pass them up when they gave me a push off side walk and started trouble by using a knife on me first and then using it on Joseph Sarnowski which I did not see how Joseph got stabbed because I was stabbed first

8. On what date was the injury received? Feb. 23rd 1930, 12 P. M.
   a. Who was at fault? The Mexicans

9. What was Deceased's occupation? Handy man

. . .

13. Did Deceased quit work at once? Off duty . . .

14. To what extent, if any, was Deceased under the influence of intoxicants or drugs? No

. . .

16. By what Company, Corporation or person are you employed? None

State of Ill.  } ss.    (Signed)   Peter Kulik
County of Cook }         ‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾
                         (Eye Witness sign here)

Address 8456 Buffalo Ave.   Chicago    Ill.
              St. No.             City      State

Personally came before me Peter Kulik and subscribed and made oath to the foregoing statement.
Witness my hand and seal, this 6 day of March, 1930

Frank X. Rydzewski, Jr. (Notarial)
Notary Public ( Seal )''

The defendant contends that ''plaintiff, having submitted this proof voluntarily for the purpose of establishing his right to recover under the policy, the exhibit was admissible in evidence, being in the nature of an admission against interest,'' and it further contends that the ruling of the court constituted prejudicial error for the reason that Kulik's answers showed that he and the deceased were going home at the time of the injury and that the deceased was ''off duty,'' and that therefore the assault was not made while the insured was engaged in the proper performance of his duties and provoked solely thereby; that certain answers of Kulik were important as bearing upon the question as to whether the assault was made for the sole purpose of robbery, and that one of the answers tends to show that the stabbing was an intentional act within the meaning of Part V. The defendant cites the rule laid down in a number of sister states, that proofs of death are to be treated as *prima facie* evidence of the facts stated therein, being in the nature of admissions; that such statements are not conclusive against the beneficiary and that the latter has the right to contradict or explain the same. The following are a few of the cases cited: *Metropolitan Life Ins. Co. v. Dabudka,* 232 Mich. 36, 204 N. W. 771; *Dickey v. Supreme Tribe of Ben Hur* (Mo.), 269 S. W. 633; *Rudolph v. John Hancock Mutual Life Ins. Co.,* 251 N. Y. 208. The plaintiff does not seriously question the fact that certain States have followed the above rule, but he contends that this rule is contrary to the one in this State, and he insists that the affidavit was not admissible under the decision in *Knights Templars Indemnity Co. v. Crayton,* 209

Ill. 550. The defendant also cites, in support of its contention, *Modern Woodmen of America v. Davis,* 184 Ill. 236. That case holds squarely that proofs of death are competent evidence for the defendant as evidence in the nature of admissions made by the plaintiff, but that a plaintiff, in the absence of estoppel, has the right to combat the truth of the statements contained in an affidavit which forms part of the proofs of death. In *Supreme Tent K. O. M. W. v. Stensland,* 206 Ill. 124, 129, the court quotes this rule with approval. In *Knights Templars Indemnity Co. v. Crayton, supra,* relied upon by the plaintiff, the court held that neither the plaintiff nor the defendant was bound by a certain statement made in the proof of death, as to the cause of the death, when the cause of death was a disputed question in the case, and that each had the right to show the contrary of the statement. That case follows the rule laid down in *Modern Woodmen of America v. Davis, supra.* That the affidavit of Kulik contains statements material to the defense is not questioned by the plaintiff. In fact, the plaintiff, in his brief, makes the following argument: "In the case at bar, under the foregoing authorities, and the contract of insurance in evidence, the defendant was required to prove, first, that the insured came to his death by the intentional act of another *and* that if he did so come to his death that the assault committed upon the insured was not for the sole purpose of burglary or robbery and/or that the assault committed on the insured was not while he was engaged in the proper performance of his duties of his occupation and provoked solely thereby. There is no evidence (1) that the assault on the insured was intentional within the meaning of the word as interpreted by the various courts; (2) that the assault was not for the purpose of robbery; (3) that the assault was not made upon insured in the proper performance of his duties or occupation and provoked solely thereby. As to the

latter the record is silent as to what the insured's occupation was; what hours he worked; what kind of work he performed; whether the assault was provoked solely thereby. The lack of proof on this element alone is sufficient to sustain the finding of the Court." The plaintiff thus concedes that certain statements made in the affidavit are relevant and material, if the affidavit is competent evidence, and his sole contention is that the affidavit was not competent evidence against him. Under the authorities, we must hold that the affidavit was competent evidence, and that the action of the court in sustaining the objection to the same constituted prejudicial error. Upon another trial, the plaintiff has a right to contradict or explain the statements in the affidavit.

The defendant contends that "the court erred in excluding part of the death certificate marked Defendant's Exhibit 2." The coroner's certificate of death stated, *inter alia:*

"I HEREBY CERTIFY, That I took charge of the remains of the deceased herein described, held an inquest thereon and from the evidence obtained find that said deceased came to his death on the date stated above and that

The CAUSE OF DEATH was as follows:

Shock and hemorrhage resulting from a stab wound of the heart due to external violence inflicted in fight with Mexicans at 84th St. and Burley Ave.

Contributory

(Secondary) *Manslaughter.*"

The court admitted in evidence the entire certificate save the following words, "inflicted in fight with Mexicans at 84th St. and Burley Ave." The defendant calls attention to certain provisions of the statute relating to the registration of deaths: Ch. 65a, par. 23, sec. 7, Cahill's 1931 Statutes, provides: ". . . The medical certificate shall be made and signed by the legally qualified physician, if any, last in attendance, or

by the coroner. . . .'' Par. 24, sec. 8, provides: ''. . . The coroner or other proper officer whose duty it is to hold an inquest on the body of any deceased person, and to make the certificate of death required for a burial permit, shall state in his certificate the name of the disease causing death, or if from external causes (1) the means of death; and (2), whether (probably) accidental, suicidal, or homicidal; and shall, in any case, furnish such information as may be required by the Department of Public Health in order to properly classify the death.'' Par. 36, sec. 20, provides: ''The State Board of Health, any local registrar or any county clerk shall, on request, furnish a certified cópy of the record of any . . . death . . . Any such copy of a . . . death, when properly certified to by the State Board of Health or the local registrar or the county clerk, shall be *prima facie* evidence in all courts and places of the facts therein stated. . . .'' The defendant argues: The ''insured died from a stab wound of the heart, which was necessarily due to external violence. It was the duty of the coroner to find out the cause and manner of the death of the deceased and whether or not some crime had been committed. The statement of the coroner in the death certificate to the effect that the stab wound was 'inflicted in a fight' and that the contributory or secondary cause of death was 'manslaughter' was clearly part of the duties of the coroner. The fact that a coroner's verdict is not admissible in evidence does not answer the point here made. The statement that the deceased was stabbed in a fight was part of the *means* of death and a basis for the contributory cause of manslaughter, which was required by the statute to be inserted by the coroner in the death certificate. It was a statement of a fact necessarily found by the coroner as part of his duties. It was, therefore, admissible under the statute as *prima facie* evidence only of the fact that the stab wound of the heart oc-

curred in a fight. . . . . The legislature clearly has
the power to change or qualify the common law rules
of evidence and to make a certified copy of a death
certificate *prima facie* evidence in all courts and
places of the facts therein stated. The statement that
the deceased was stabbed while in a fight was a state-
ment of a fact which was clearly within the province
of the coroner to find and related to the means of death
and whether the death was accidental or homicidal,
which was required to be inserted in the death cer-
tificate by the statute.'' In support of the instant
contention the defendant cites *Hamer v. Globe Mut.
Life Ins. Co.*, 243 Ill. App. 109, 116–7, and *Guter v.
Security Benefit Ass'n*, 250 Ill. App. 635. In the first
case it appears that the plaintiff objected to the offer
of a certified copy of the certificate of death of the
insured upon the ground that the defendant did not
lay a proper foundation for the introduction of the
certificate by showing that it met the statutory require-
ments as to form of certificate prepared by the board
of health of the State of Illinois, and it was held that
this objection to the offer was without merit and that
therefore the trial court erred in his ruling. *Guter v.
Security Benefit Ass'n, supra,* was decided by this
branch of the court. From the opinion we filed therein
it does not appear that there was any question raised
in the lower court as to the admissibility of the cer-
tified copy of the death certificate. It is clear that the
question now before us was not passed upon in either
of these cases. In *Henninger v. Inter-Ocean Casualty
Co.*, 217 Ill. App. 542, it appears that the death cer-
tificate was made by a doctor. Part of it was as fol-
lows: ''The cause of death was as follows: Septicemia
(started in Rt. Leg from abrasion of skin) (made by
garter buckle July 12).'' Upon objection the words
''made by garter buckle July 12'' were not admitted
in evidence. The court held that while the statute
provided that such a certificate shall be *prima facie*
evidence of the facts therein stated, it does not make

such a certificate *prima facie* evidence of mere conclusions based upon hearsay; that "it will be readily perceived that such a construction of the statute would lead to most dangerous and hazardous consequences." Par. 24, sec. 8, *supra,* provides that the coroner "shall state in his certificate the name of the disease causing death, or if from external causes (1) the means of death; and (2), whether (probably) accidental, suicidal, or homicidal." From the wording of this provision it is evident that the legislature recognized the fact that par. 36, sec. 20, which provides that a certified copy of a certificate of death "shall be *prima facie* evidence in all courts and places of the facts therein stated," standing alone, would work great injustices to litigants, and therefore the second paragraph of par. 24, sec. 8, was passed. This provision states in clear and certain language what the certificate shall contain. As applied to the instant case, it called upon the coroner to state that the cause of death was "shock and hemorrhage resulting from a stab wound of the heart due to external violence," and that it was a homicidal case, or probably one. It was not intended, in our judgment, that the certificate of death should classify the nature of the homicide or contain a statement as to the facts surrounding the homicide. The certificate, it will be noted, states that the act of the Mexican constituted "manslaughter," while the statute calls upon the coroner to merely state that it was probably a "homicidal" case. "Homicide is a comprehensive word which means any killing of a human being, whether by his own act or by the act of another. It does not necessarily import a crime, but includes also those cases in which the law justifies or excuses the taking of human life." (21 Am. & Eng. Enc. of Law, p. 91.) Under our statute, "murder is the unlawful killing of a human being, in the peace of the People, with malice aforethought, either expressed or implied." Manslaughter "is the unlawful killing of a human being without malice, express or implied, and

without any mixture of deliberation whatever. It must be voluntary, upon a sudden heat of passion caused by a provocation apparently sufficient to make the passion irresistible, or involuntary in the commission of an unlawful act, or a lawful act without due caution or circumspection.'' In the instant case, the coroner, instead of merely stating that it was a homicidal case, or probably one, saw fit to state, in effect, that the killing was unlawful and of the grade of manslaughter. In *Spiegel's House Furnishing Co. v. Industrial Commission,* 288 Ill. 422, the court overruled many former decisions it had made and held ''that it should be no longer the policy of this State and the holding of this court that a coroner's verdict or inquest should be admissible as evidence in civil suits for the purpose of establishing personal liability against any individual in cases where the death of any person is charged or to establish a defense to such a suit, or for the purpose of establishing other issues between private litigants,'' and the court expressly stated that one of the reasons that caused it to overrule its former decisions was that ''a review of the above cases clearly discloses that many of the cases, if not all of them, have been largely controlled by the admission in evidence of the verdicts of the coroner's jury, and in many of them such verdicts have furnished the sole evidence to establish liability. As a consequence of such practice there has resulted in this State a race and scramble by litigants to secure a favorable coroner's verdict that would influence or control in case a civil suit should be brought to establish a claim by reason of death. It is not intimated here that plaintiffs prosecuting such suits have offended more in this particular practice than defendants who are sued in such suits, and it is believed that the facts would disclose that both are alike guilty. It cannot be questioned that as a result of such practice the coroner's verdict in many cases has been, and will continue to be, a mere trap or device

for the purpose of catching the unwary in such suits and that public interests intended to be served by coroner's inquests may not be so well guarded as they otherwise would be.'' In the instant case the certificate of the coroner contains statements he was not called upon to make, under the statute, and which are harmful to the plaintiff and helpful to the defendant. Now that a coroner's verdict is no longer admissible in evidence in a case like the present one it is the duty of the courts to guard the rights of litigants when certificates of death are offered in evidence, lest they become ''a mere trap or device for the purpose of catching the unwary,'' and when statements not authorized by the act are incorporated in a certificate, they must be treated as surplusage and excluded. We hold that the trial court did not err in excluding the words in question. Upon a new trial the word ''manslaughter'' should also be excluded.

What we have said as to what should be stated in a certificate of death, issued under the statute, does not, of course, apply to a verdict in the case of a coroner's inquest. Our statute requires a coroner, as soon as he knows or is informed that a dead body is lying within his county, supposed to have come to his or her death by violence, casualty or any undue means, shall repair to the place where the dead body is, take charge of the same, and forthwith summon a jury and swear them to diligently make the inquiries required by the statute and to deliver to him a true inquest thereof. The jurors are required to inquire how, in what manner and by whom or what the body came to its death, and ascertain all the facts of and concerning the same, together with all material circumstances in anywise related to or connected with said death, and to make up and sign a verdict or true inquest, and the coroner is obliged to cause the testimony of the witnesses to be written out and signed by the witnesses, and the coroner has the further power to commit persons

implicated in the killing. A coroner's verdict is often necessarily broad. On the other hand, a certificate of death is merely the instrument which the undertaker must obtain from the attending physician, or the coroner in case of an inquest, and which he must file with the local or sub-registrar of the district in which the death occurred, in order to obtain a permit to bury or remove the body.

The defendant further contends that the admitted evidence clearly establishes that the act of the Mexican was intentional, and that Part V of the contract of insurance is not ambiguous and does not cover loss of life if the injury causing it results from the intentional act of some other person, and that therefore the finding should have been for the defendant. In arriving at its conclusion as to the effect of the evidence, the defendant indulges in presumptions and inferences not warranted by the evidence and assumes that all of the alleged facts stated in the certificate of death were competent evidence, and also assumes that the plaintiff, by his replication to defendant's second special plea, admitted that the stabbing was an intentional act within the meaning of Part V. We have referred to this question of pleading in disposing of the defendant's first contention. We cannot agree with the contention that the trial court was bound to find for the defendant under the undisputed facts of the case, but as this case may be tried again we purposely refrain from commenting upon the facts and circumstances in the case and the law bearing upon the same.

The defendant has raised several other contentions but we do not deem it necessary to refer to them.

For the error of the trial court in refusing to admit the affidavit of Peter Kulik, the judgment of the superior court of Cook county is reversed and the cause is remanded.

*Reversed and remanded.*

GRIDLEY, P. J., and KERNER, J., concur.