## Interstate Business Men's Accident Association v. Dunn.

(Decided December 4, 1917.)

### Appeal from Henderson Circuit Court.

1. Insurance—Accident Insurance—Construction of Policy—Injuries —Loss of Life.—The policy contract of an accident association insured a member against bodily injuries resulting from accidental means, and specified the amount it would pay in the event the insured "lost his life" by accident. In the exemption clause it was provided that the insurance should not cover any loss due to "the act of any person done to injure the insured." The insured was intentionally killed. Held that the word "injure" in the exemption clause should be confined to non-fatal injuries and did not include loss of life by accidental means.

2. Insurance—Construction of Policy—Definition of Word "Injure." —The word "injure" is not a technical word. It has a popular and well understood meaning and is customarily confined to injuries that are not fatal.

3. Insurance—Construction of Policy—Doubtful Words and Clauses Will be Construed in Favor of the Insured.—Ambiguities, and words, sentences or clauses of doubtful meaning, will be construed against the company and in favor of the insured.

R. M. HAINES, DUNSHEE, HAINES & BRODY and YEAMAN & YEAMAN for appellant.

HENSON & TAYLOR for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Affirming.

In April, 1916, the appellant association issued to Dr. M. C. Dunn a certificate of membership, in which it agreed, in the event of the death of the insured "from bodily injuries effected solely and independently of all other causes or conditions concurring, contributing or intervening, through external, violent and accidental means," to pay his wife, the beneficiary named in the policy, the sum of five thousand dollars.

In the schedule of injuries for which compensation would be paid and the amount thereof, we find, for example, these, among others: "For loss of both eyes, $5,000.00; for loss of either hand, $1,250.00; for loss of either eye, $1,250.00; for loss of life, $5,000.00." It will thus be seen that unless the company was exempt from liability by other provisions in the policy, it was obliged by the clauses we have set forth to pay to the beneficiary, in the event of the death of the insured, the sum stipu-

lated, as it is agreed that his death came within the protective features of the policy.

In another part of the policy there is a paragraph exempting the company from liability in certain described states of case, and this paragraph reads, in part: "This certificate shall be in suspension and the insurance herein provided shall not extend to or cover any loss due to . . . . the act of any person done to *injure* the insured."

After the death of Dr. Dunn, in a suit by the appellee beneficiary to recover from the association five thousand dollars, and after the association had filed its answer denying liability, the case was submitted upon the following agreed statement of facts:

"(1) The policy upon which this suit commenced was in full force and effect at the time of the injury and death of Dr. M. C. Dunn.

"(2) The plaintiff is the beneficiary named in the policy, and as such has done and performed the conditions preliminary to maturing her claim.

"(3) Dr. M. C. Dunn was intentionally shot and murdered by one Charles M. Wyne, at Henderson, Ky., on August 10, 1916, and the said shooting and killing of the said Dr. M. C. Dunn by the said Charles M. Wyne was not done in any affray or mutual encounter, nor brought on or caused by any demonstration, threat, or menace by the said Dunn, but the said Dunn at said time was unarmed and attempting to escape from the said Charles M. Wyne; and said attack upon the said Dr. M. C. Dunn at said time was wholly unprovoked, unexpected, and unforeseen upon the part of the said Dunn, and the said Charles M. Wyne at said time shot the said Dr. M. C. Dunn with the fixed purpose and intention to kill the said Dr. M. C. Dunn.

"(4) Plaintiff is entitled to a judgment for five thousand dollars with interest and costs, unless the court shall hold as a matter of law that the company is not liable for a death so occurring by reason of the following provisions of paragraph 6 of part E, to-wit: 'This certificate shall be in suspension and the insurance herein provided shall not extend to or cover any loss due to the act of any person done to injure the insured or another or to cause the insured or another to desist from doing any lawful act, whether the person be irresponsible by reason of any form or degree of mental derangement or any other cause; disability or death resulting from an injury produced by the discharge of a firearm

unless the claimant shall establish the accidental cause of the discharge by the testimony of a person other than the insured or the claimant, who actually saw the accidental cause in operation.' ''

On this statement of facts and the contract of insurance the lower court entered a judgment in favor of Mrs. Dunn for five thousand dollars with interest, and the association appeals.

It will be seen from the stipulation of facts and the terms of the policy that the only point of disagreement between the parties to this litigation falls within a very narrow compass, counsel for the association contending that as Dr. Dunn was intentionally shot and killed, the association is relieved from liability by so much of paragraph six of part ''E'' as provides that the insurance ''shall not extend to or cover any loss due to the act of any person done to *injure* the insured.'' In other words, the argument is that the word ''injure'' includes the word ''kill,'' and that this exemption clause should be so construed as to read that the insurance ''shall not extend to or cover any loss due to the act of any person done to injure or kill the insured''; while counsel for Mrs. Dunn insist that the clause relied on by the association exempts it for liability only in respect to injury and not death intentionally inflicted by another person.

It is plain that if the policy had not contained this exemption clause, there could be no question raised as to the liability of the association—and this is conceded. And so we repeat, the only point in controversy is, does the word ''injure,'' in the connection in which it was used in this exemption clause, cover and include the word ''death''? If it does, the judgment should be reversed; otherwise it should be affirmed.

Just why there was not inserted in this part of the exemption clause now under consideration the words ''to kill'' after the words ''to injure,'' we do not of course know, but we do know that the insertion of the words ''to kill'' would have made plain a provision that without these words is involved in some doubt and probably susceptible of two interpretations. But it cannot be assumed that the omission of these words was by inadvertence or mistake, because insurance companies in writing policies of insurance do not omit or insert words by mistake or inadvertence. When an important word, or a word that would affect the meaning of a policy, is either inserted or omitted, it is safe to assume that the

insurance company had good reason for the omission or the insertion.

It will be seen that in the last clause of paragraph six the words "disability or death" are used, the effect of which is that the policy does not cover any loss due to "disability or death resulting from an injury produced by the discharge of a firearm." And so it is plain that under this condition there could be no recovery by the insured for disability or for death resulting from an injury produced by the discharge of a firearm. In this clause the association carefully protected itself from liability not only against disability but against death, showing that it recognized the necessity for using the word death in addition to the word disability, although the disability might result in death; but when it came to protect itself against loss due to an intentional, violent act committed by another person against the insured, it omitted the word death or any word of like meaning and stipulated only that it should not be liable for any loss due to the act of any person done to injure the insured.

The word injure is not a technical word. It is in common use, has a popular and well understood meaning, and from the context we take it for granted it was intended to have its popular meaning in this contract. It it defined by Webster as meaning "To do harm to; to hurt; to damage, as to hurt or wound." See also 16 A. & E. Ency. of law, page 499; 22 Cyc. page 1062. And this is its commonly understood meaning in ordinary usage. It is not referable to nor is it used in describing fatal injuries; but is customarily confined to injuries that are not fatal. For example, if a man is shot and killed instantly, we would not say that he was injured but that he was killed. But if he was merely wounded, we would not, of course, say that he was killed, but that he was injured or wounded. If a man should fall from the top of a house and die instantly, no person would say, in speaking of the accident, that he fell from the top of the house and was injured. They would say that he fell from the top of the house and was killed. But if he was not killed, it would be said that he fell from the top of the house and was injured.

Considering now these parts of the policy to which we have called attention in connection with the well established rule that "In the construction of policies the same rules obtain as do in the construction of other contracts;

with the exception that a policy will be construed in favor of the insured so as not to defeat, without plain necessity, his claim to the indemnity which in taking the insurance it was his object to secure; and, when the words are fairly susceptible of two interpretations, that which will sustain his claim and cover the loss must by preference be adopted. It may also be said that ambiguities, and words, sentences, or clauses of doubtful meaning, will be construed against the insurer; and this for the reason so often declared that the companies themselves prepare the policies with great care and deliberation, and, as the insured has no election except to accept them as prepared and presented to him, it is fair that they should be construed most strongly against the insurer and most liberally in favor of the insured, so that the purpose for which the insurance was obtained may be effectuated, if this can be done without doing violence to the contract:'' Spring Garden Ins. Co. v. Imperial Tobacco Co., 132 Ky. 7, we find little difficulty in reaching the conclusion that the clause relied on does not exempt the association from liability.

In adopting this construction we have not overlooked the argument that in the insuring clause it is provided that the association ''does agree to pay at its home office in Des Moines, Iowa, compensation for loss resulting from bodily injuries effected solely and independently of all other causes or conditions concurring, contributing or intervening, through external, violent and accidental means,'' or the fact that one of the injuries insured against is ''loss of life.'' Now it is said that as the word ''injuries'' in the insuring clause was intended to and did cover ''loss of life,'' and as the exemption clause was intended to exempt the association from all liability for the injuries therein mentioned, the word ''injury'' in the exemption clause should be given the same meaning as the word ''injuries'' in the insuring clause; or, to put it in another way, that as the word ''injuries'' in the insuring clause included ''loss of life,'' so should the word ''injury'' in the exemption clause, because by the exemption clause the association intended to relieve itself from liability, in the cases therein mentioned, from the operation of the insuring clause. In support of this argument we are referred to the case of Continental Casualty Co. v. Morris, 46 Tex. Civ. App. 394, which fully sustains it.

But we do not agree with the construction of the policy contract approved by the Texas court. The association had the right in any clause of its policy to give well understood words a broader meaning than their natural and ordinary import would imply by specifying what meaning they should have in the contract or what acts they should include, and this is what the association did in its insuring clause by providing that "loss of life" should be included in the word "injuries;" but when it came to the exemption clause it did not in that clause attempt to give the word "injury" any broader meaning than it has in common usage or any meaning that would enlarge it to include "loss of life."

Nor does it follow at all that the association intended by the exemption clause to cover all the cases of liability assumed in the insuring clause. Whether the association wanted to do this or not rested with it, and according to our view of the contract it did not do so. The exemption clause provides that "this certificate shall be in suspension and the insurance herein provided shall not extend to or cover any loss due to . . . the act of any person done to injure the insured," thus plainly, as we think, confining the particular exemption to injury not including death. The contract specifically insured against and provided for compensation if the insured should lose his life and also insured against and provided compensation for a great number of injuries, and we think it clear that if the contract had not specified loss of life as one of the conditions entitling the insured to compensation and had limited its liability to the specific injuries mentioned in the contract, it could not be contended that the contract covered death or loss of life or anything other than the injuries specifically mentioned. In short, the association, in writing the contract, had the right to describe the acts that would create liability on its part and to describe the acts that would exempt it from liability, and in the exercise of this privilege it saw proper to enlarge its liability by providing for compensation for loss of life but did not provide for exemption in case the loss of life was caused by accident.

Fully supporting the construction we have given the contract is the opinion of this court in the case of the American Accident Company of Louisville v. Carson, 99 Ky. 441. In that case the accident company issued a policy to Carson insuring him against certain named ac-

cidents, stipulating that in the event he sustained one of these accidents and death resulted, it would pay the estate of the insured or his beneficiary the amount of the insurance contracted for. On the back of the policy there was an exemption clause similar to the exemption clause in this contract for the benefit of the company, which provided that "This insurance does not cover disappearance nor suicide while sane or insane . . . nor extend to or cover intentional injuries inflicted by the insured or any other person, or injury or death happening while the insured is insane or under the influence of intoxicating drinks or narcotics."

Carson, while this policy was in force, was intentionally killed by one Jesse Burton, and the question in the case was, whether the word "injuries" in the exemption clause included the word "death." It was contended by the company in that case, as it is by the association in this, that it was not liable because Carson was intentionally killed, and its express exemption from liability in the event he was injured exonerated it from liability for his death, although the word death was not used in the clause covering intentional injury, notwithstanding it was used in the succeeding clause relating to "injury or death" happening while the insured was insane or under the influence of intoxicating drinks or narcotics.

In considering this argument for the company, and in holding that the clause did not exempt it, the court said: "The significant omission of the word 'death' in this particular clause requires us to hold that the exception referred only to non-fatal injuries intentionally inflicted by the insured or any other person."

Counsel for the association attempt to make a distinction between the contract in the Carson case and the contract in this case, but there is no ground upon which these contracts can be distinguished so far as the matter now under investigation is concerned.

Judgment affirmed.