## INTERNATIONAL TRAVELERS' ASS'N v. BARNES.

### No. 8647.

Court of Civil Appeals of Texas. San Antonio.

Oct. 21, 1931.

Rehearing Denied Nov. 18, 1931.

Jno. C. North and R. B. King, both of Corpus Christi, and Seay, Seay, Malone & Lipscomb, of Dallas, for appellant.

Boone & Raymer, Allen V. Davis, and W. E. Pope, all of Corpus Christi, for appellee.

FLY, C. J.

Appellee, in her own right as widow of Jesse A. Barnes, deceased, and as executrix of her husband's will, sued appellant to recover on a policy issued by appellant on the life of Jesse A. Barnes in the sum of $5,000.

The cause was tried by jury and verdict and judgment rendered in favor of appellee for the amount of the policy with interest in the sum of $2,007.50.

The defenses presented were that the policy sued on was not in effect at the time of the death of Mr. Barnes, and that the second policy, which was in effect, contained a provision exempting appellant from liability. The cause was presented to the jury on one special issue, to which the jury answered, in effect, that the second policy was not issued, and that the first policy was in effect.

It was provided in the first policy that appellant would not be liable "for intentional injuries inflicted on the insured by others unless such injuries are inflicted for the sole purpose of burglary or robbery." The words are not qualified by the words "fatal or otherwise" as used in regard to other injuries mentioned as recited in the policy.

The words in the second policy are that the insurer is not liable for injuries fatal or otherwise "by the act of any person (sane or insane) done to injure the insured except for the sole purpose of burglary or robbery, etc."

The liability, of course, must be fixed by the language of the first policy, as the jury found that no policy was issued to deceased except the one issued in 1918, the language of which provides for injuries inflicted intentionally by some other person. The insurance company strove to make the policy of 1923 the contract between the parties, in order to meet the rule which would construe the language of the old policy; which language has been construed by this court to not include injuries resulting in death. In the case of Provident Life & Accident Insurance Co. v. Johnson (Tex. Civ. App.) 235 S. W. 650, 652, the identical language used in this case as to injuries inflicted by others was construed, and, following the rule which requires the language of a policy to be construed more strongly against the insurer, it was held that the exception as to injuries maliciously inflicted by another did not include injuries causing death. This court said:

"And it must be construed most strongly against the insurance company, which, having selected the exemptions through which it may escape liability, and having the opportunity of choosing its own language in imposing conditions not often scrutinized or analyzed by persons accepting insurance, the meaning of the terms used need not be enlarged or restricted for the benefit of the com-

pany but should be liberally interpreted in favor of the insured. * * *

"If it had provided that, 'if said disability or fatal injury results from the intentional act of another,' etc., it would have been but a reiteration of the exempting injuries mentioned in the introductory clause. If it had omitted both 'disability' and 'fatal injury,' it would have had the same effect. But it neither omitted both nor mentioned both.. It simply brought forward out of the introductory clause only the word '(said) disability.' We think the effect of this was to drop the words 'fatal injury' out of the exemption clause with respect to intentional injuries. The use of the interpolated word was certainly for some purpose. We think it was for the purpose of excluding 'fatal injury' from the exemption.

"We are not without authority for this holding. It is true the authorities are limited, but it is also true that similarly worded exemptions are extremely rare in such policies. Usually these policies specifically include injuries, 'fatal or otherwise,' in the exemption clause, leaving no doubt of the purpose or effect. Here the peculiar language, even if not clearly excluding fatal injury, at least creates a substantial doubt of the purpose to include fatal injury, and, that being true, the doubt must be resolved against the insurer, first, because of the general rule that insurance policies must be most strongly construed against the insurer, and in favor of the insured; and, second, because the provision in which it arises is in the nature of a forfeiture or penalty.

"It is frankly conceded by appellant that the language used in the policy involved 'is not exactly like that used in any policy involved in any of the cases read by us.' So is this true of the cases cited by appellant. And it is this very dissimilarity of language that distinguishes this case from those cited by appellant, and which, in our opinion, renders the attempted exemption ineffectual in this case. A case we regard as being nearer in point, in principle, than any of those cited by appellant is that of American Accident Co. v. Carson, 99 Ky. 441, 36 S. W. 169, 34 L. R. A. 301, 59 Am. St. Rep. 473, in which the exemption clause corresponding to the one in this case was as follows:

" 'This insurance does not cover disappearances; nor suicide, while sane or insane; nor injuries, whether fatal or otherwise, of which there is no visible mark upon the body; nor accidental injuries or death resulting from or caused, directly or indirectly, wholly or in part, by hernia, fits; * * * nor extend to or cover intentional injuries inflicted by the insured or any other person, or injury or death happening while the insured is insane, or under the influence of intoxicating drinks or narcotics,' etc.

"In that case the Court of Appeals of Kentucky held that because of the peculiar language of the clause the company, while not liable for nonfatal, was liable for fatal, injury intentionally inflicted upon the insured by another person, because of 'the significant omission of the word "death" in this particular clause.' The court further said:

" 'Here we find a difference between the policy under consideration and all others we have examined. The words "death or injury" are used in all of them, and indeed in this policy we find those words separated for the first time in the clause under discussion. We find it provided in the preceding clause that "this policy does not cover accidental injuries or death resulting from hernia," etc.; and immediately succeeding the clause in dispute the language is, "or injury or death happening while the insured is insane," etc. We notice, too, that the policy is not to cover injuries, whether fatal or otherwise, of which there are no visible marks upon the body. And it appears well settled that this exception, without the words "fatal or otherwise," has reference only to cases of bodily injury which do not result fatally; that is, the word "injury" is used in its usual sense, as implying a hurt not resulting in death.'

"The decision in the Carson Case is approved by the same court in a later case involving the same question. Interstate, etc., v. Dunn, 178 Ky. 193, 198 S. W. 727, 6 A. L. R. 1333 and it is said that the decision in the Carson Case has also been approved in Gavula v. U. S., etc., Co., 15 Pa. Dist. R. 432 (to which we have no access)—'where a policy * * * provided, "in event of injuries, fatal or otherwise, except drowning, * * * or injuries, fatal or otherwise, or disability, resulting * * * from inhalation of any gas, * * * or from any intoxicant, * * * exposure to obvious danger * * * from injuries intentionally inflicted upon the assured by himself or by any other person," the insurer's liability shall be limited to a certain amount, and the court held that the word "injuries," being used alone in the clause relating to intentional injuries, did not extend the exemption from liability to fatal injuries.' "

The first proposition complains of the refusal of the court to submit the issues as to whether the box sent to deceased was sent to him with the intention of killing him, and did kill him. No other conclusion could have been reached than that the explosive in the box was sent to deceased with the intention of murdering the deceased. The circumstances show beyond the peradventure of doubt that deceased was killed by the explosion of the contents of the box. No other reasonable conclusion could be reached.

The evidence fails to show that a new policy was issued to deceased in 1923, and the application introduced in evidence by appellant shows that it construed the application

·to be for reinstatement of the original policy and not for the issuance of a new one. No new number was placed on the new policy, but all the acts between the parties were performed under the original number. The reason given by appellant for the use of the original number in all the transactions is without reason and utterly unconvincing. Under the terms of the only policy issued to deceased appellant is liable to appellee in the amount found by the jury.

The judgment is affirmed.