## NATIONAL LIFE & ACCIDENT INS. CO. v. MAY.

No. 23636.   Dec. 11, 1934.

Rehearing Denied Jan. 8, 1935.

Cochran & Noble and S. L. O'Bannon, for plaintiff in error.

J. H. Stephens, for defendant in error.

PER CURIAM. This is an action to recover for the death of Ben H. May under a life and accident insurance policy which insured the deceased "against loss of life, limb, limbs, sight, or speech and hearing, resulting directly and independently of all other causes from a bodily injury which is effected accidentally and through external and violent means (excluding suicide, sane or insane), herein called 'such injury,' in the initial principal sum of five hundred dollars; all in the manner hereinafter provided and subject to the conditions and limitations hereinafter contained."

Section O of the policy provides:

"This policy does not cover suicide (sane or insane); nor any venereal disease; nor any disease not common to both sexes; nor aeronautics; nor military or naval service in time of war; nor injuries intentionally inflicted upon the assured by himself or by any other person except by burglars or robbers; nor the assured while in the Tropics or in any part of Alaska or in the British Possessions of North American, north of the sixtieth degree of north latitude, and there shall be no liability whatever against the company in any such cases."

The plaintiff, Katie May, who is the beneficiary named in said insurance policy, alleged in her petition that the insured, Ben H. May, died as a result of a shot from a gun fired recklessly and heedlessly or accidentally and at random by one Henry (Sonny) Carson, while the latter was on a drunken spree and wholly unaware of the presence or proximity of the insured and while the insured was casually passing along the street in the city of Seminole.

In its answer the defendant denied that the shot was accidental, and alleged that Carson pointed his gun at the insured and deliberately and intentionally shot him.

The evidence shows that Ben May was referred to as "Uncle Ben," and that he was a colored policeman in Seminole, and that Carson was also colored, and that they were friends; that the shooting occurred after dark in the evening; that just before the shooting, Ben May passed in front of the rooming house where Carson was, and that the light from the rooming house was shining out in front through the window so that Carson could see May pass; that just after May passed and was about 40 feet down the sidewalk, Carson ran out of the rooming house with a rifle and said, "Look out, Uncle Ben," and fired in his direction twice, and that May shot once at Carson,

and that May was shot in the leg, as a result of which he died the next day; there was some evidence that Carson had been drinking in the rooming house, but none that he was drunk. It is not contended that he was a robber or a burglar. There was evidence that May was talking with someone at the time of the shooting, but none as to who the person was.

The witnesses for both the plaintiff and defendant testified to substantially the above facts, and there was no material conflict in the evidence. At the close of plaintiff's evidence the defendant demurred thereto, which demurrer was overruled. After both sides rested, the plaintiff moved for a directed verdict in her behalf, which motion was sustained, and a verdict was accordingly returned in favor of the plaintiff. From an order overruling motion for new trial, the defendant appeals.

It is conceded by the company that, if it did not contain section O, the policy would protect the insured against death caused by intentional injuries inflicted by another. Union Accident Company v. Willis, 44 Okla. 578, 145 P. 812.

The decisive question in this case is whether section O of the policy covers fatal injuries intentionally inflicted by another. If it does not, the decision of the lower court should be affirmed; if it does, it should be reversed.

This court has repeatedly held that provisions of insurance policies exempting the insurer from liability under certain conditions will be construed strictly against the insurer. Barnett v. Merchants Life Ins. Co., 87 Okla. 42, 208 P. 271; Bankers Life Co. v. Rice, 99 Okla. 184, 226 P. 324; General Accident Fire & Life Assurance Corporation v. Hymes, 77 Okla. 20, 185 P. 1085; Great Southern Life Insurance Co. v. Churchwell, 91 Okla. 157, 216 P. 670. This is also the general rule. 1 C. J. 38; 14 R. C. L. 926.

For a reversal of this case the insurance company relies upon National Life & Accident Insurance Co. v. Hannon (Ala.) 108 So. 575, and National Life & Accident Insurance Co. v. DeLopez (Tex.) 207 S. W. 160, which cases construe policies of this same company identical or practically identical with the policy involved in this case, and hold that section O refers to fatal as well as nonfatal injuries.

On the other hand, the defendant in error,

to sustain the action of the lower court in directing a verdict in her behalf, relies upon Business Men's Ind. Ass'n v. Washburn (Ind.) 157 N. E. 104, and American Accident Insurance Co. v. Carson, 99 Ky. 441, 36 S. W. 169, 34 L. R. A. 301, 59 Am. St. Rep. 473, which hold that exemption clauses similar to section O of the policy involved in this case, referring to injuries without words naming fatal injuries, will be construed strictly against the insurer so as not to include fatal injuries.

The question involved depends upon the context in which the word "injuries" is used. It will be observed that the insuring clause insures against loss of life resulting from bodily injury "herein called 'such injury.'" In nearly every paragraph of the policy the injury is referred to as "such injury," but not so in section O, which uses the word "injuries."

Section O exempts the company from liability on seven different grounds. Some of them refer to exemption from liability for sick benefits. All the others, with the possible exception of the one applicable to the facts of this case, are broad enough to include death. In fact, the first ground is suicide, which clearly exempts the company from liability for fatal injuries intentionally inflicted by the assured. To hold that the other ground of exemption, namely, "injuries intentionally inflicted upon the assured by himself or by any other person," is broad enough to include fatal injuries intentionally inflicted by the assured, would mean that the company twice in the same paragraph exempted itself from liability for suicide. This would be unusual. The more natural and reasonable construction would be that the first refers to fatal injuries intentionally inflicted by the assured, and that the other refers to nonfatal injuries intentionally inflicted by the assured. The clause in question uses the word "injuries" in the same sense in connection with self-inflicted injuries that it does in connection with those inflicted by another. If the one does not include fatal injuries, neither does the other.

In the case of Interstate Business Men's Accident Association v. Dunn, 178 Ky. 193, 198 S. W. 727, 6 A. L. R. 1333, the court uses the following language:

"The word 'injure' is not a technical word. It is in common use, has a popular and well-understood meaning, and from the context we take it for granted it was intended to have its popular meaning in this contract. It is defined by Webster as meaning: 'To

do harm to; to hurt; to damage, as to hurt or wound.' See, also, 16 Am. & Eng. Enc. Law, 499; 22 Cyc. 1062. And this is its commonly understood meaning in ordinary usage. It is not referable to, nor is it used in describing, fatal injuries, but is customarily confined to injuries that are not fatal. For example, if a man is shot and killed instantly, we would not say that he was injured, but that he was killed."

In the Washburn Case, supra, the Appellate Court of Indiana, in holding that an exemption clause similar to said section O did not refer to fatal injuries, used the following language:

"We do not know why the word 'death' was not inserted in the exemption clause of the policy now under consideration after the word 'injury.' We do know that the insertion of the word 'death' would have made plain a provision which, without this word, is involved in some doubt and susceptible of two interpretations, and we cannot assume the word was omitted by inadvertence. Indeed, we must assume the word 'death' was omitted for some good and sufficient reason. See Interstate Business Men's Accident Ass'n v. Dunn, 178 Ky. 193, 198 S. W. 727, 6 A. L. R. 1333.

"The policy deals with and covers accidental injuries, loss of life, and disability. The exemption clause deals with injuries only, and it may well be said that no exemption from death was intended. See Kascoutas v. Federal Life Ins. Co., 193 Iowa, 343, 185 N. W. 125, 22 A. L. R. 294 (second appeal). For opinion on first appeal, see same title, 189 Iowa, 889, 179 N. W. 133."

We do not think it possible to reconcile the two decisions relied upon by the company with the decisions relied upon by the defendant in error. While the two decisions relied upon by the company are more nearly in point, since they involve policies practically identical with the policy involved in this case, we do not agree with them.

For the foregoing reasons, we do not think it can be said that the clause involved in this case clearly refers to fatal injuries. Rather, we think it is more reasonable to construe it as not referring to fatal injuries. Therefore, following the rule of strict construction against the insurer which this court has uniformly applied, we hold that the exemption clause does not refer to fatal injuries intentionally inflicted by another.

Judgment affirmed.

The Supreme Court acknowledges the aid of District Judge Thurman S. Hurst, who assisted in the preparation of this opinion. The District Judge's analysis of law and

facts was assigned to a Justice of this court for examination and report. Thereafter, the opinion, as modified, was adopted by the court.