## Steve Ziolkowski, Appellee, v. Continental Casualty Company, Appellant.

### Gen. No. 38,397.

Opinion filed April 7, 1936.   Rehearing denied April 23, 1936.

George C. Bliss, of Chicago, for appellant.

Peden, Melaniphy, Ryan & Andreas, of Chicago, for appellee; John C. Melaniphy, of counsel.

Mr. Presiding Justice Scanlan delivered the opinion of the court.

Plaintiff sued defendant in assumpsit as beneficiary under an accident insurance policy issued by defendant to one Joseph Sarnouski. The case was tried by the court, the issues were found for plaintiff, and damages were assessed in the sum of $2,979. Defendant appeals from a judgment entered upon the finding.

This was the third trial of the cause. In the first there was a finding and judgment in favor of plaintiff, and upon appeal we reversed the judgment and remanded the cause because of the refusal of the trial court to admit certain documentary evidence offered by defendant. (*Ziolkowski v. Continental Casualty Co.,* 263 Ill. App. 31.) Upon the second trial the issues were found for plaintiff and damages were assessed in the sum of $2,645, and upon appeal we reversed the judgment and remanded the cause (270 Ill. App. 286). The parties then stipulated that all the evidence which was presented at the second trial would be admitted in evidence upon the third trial. No additional evidence was heard.

To quote from our opinion upon the first appeal (263 Ill. App. 31, 32–33):

"The declaration, consisting of one count, contained a copy of the contract of insurance. The defendant filed a plea of the general issue and two special pleas, the first special plea alleging 'that the injury causing the loss of life of insured resulted from an intentional act of insured or some other person'; and the second special plea alleging 'that the injury causing the loss of life of insured resulted from an intentional act of

another person, to-wit, a stab wound, which assault was not committed upon the assured by such other person for the sole purpose of burglary or robbery and which assault was not incurred by insured while engaged in the proper performance of the duties of his occupation and provoked solely thereby,' etc. The plaintiff filed replications to the two special pleas.''

Upon the instant hearing, after both sides rested, at the suggestion of the trial court, plaintiff withdrew the replications to the second and third pleas and filed a general demurrer, attached to which was the following ''causes of demurrer'':

''And the plaintiff shows to the Court here the following causes of demurrer to said second and third pleas, that is to say:

''1. That the term 'injury' as used in said second plea and in part 5 of said Insurance Policy, Sub-paragraph 3, does not include fatal injury, but is confined to non-fatal injuries.

''2. In that the third plea is insufficient in that the word 'injury' as used in said plea and in part 5 of said Insurance contract, sub-paragraph 3, does not include fatal injuries, but is confined to non-fatal injuries.

''3. In that Part 5 of said Insurance Policy does not exempt the defendant from liability where the Insured was killed by means of accident, even though the act or acts causing the death of the Insured were intentional.

''Wherefore, for want of sufficient pleas in this behalf the plaintiff prays judgment and that the defendant may answer further to said declaration, etc.''
The court sustained the demurrer and entered the instant judgment.

Defendant contends that ''the mandate of this court reversing and remanding this cause was not filed (in the trial court) within the one-year limitation period provided by the (new) Civil Practice Act,'' effective January 1, 1934 (Cahill's Ill. Rev. Stat. 1933). Under

the old Practice Act (Cahill's 1931, ch. 110, sec. 114) a two-year period was provided. Our opinion and judgment was filed on April 11, 1933, the mandate was filed in the superior court on January 5, 1935, and the cause was reinstated for trial on January 25, 1935, and was tried on February 20, 1935. Rule 1 of the Rules of Pleading, Practice and Procedure adopted by the Supreme Court of Illinois at the December term, 1933 (Ill. State Bar Stats. 1935, ch. 110, ¶ 223), provides:

"Applicability of Civil Practice Act. All provisions of the Civil Practice Act with respect to review in civil proceedings by the Supreme or Appellate Courts shall apply to orders, determinations, decisions, judgments or decrees entered by trial courts, on or after January 1, 1934. All suits in which a summons has been issued prior to January 1, 1934, but in which no pleadings have been filed by either party prior thereto, shall be governed by the Civil Practice Act. The provisions of the Civil Practice Act with respect to service of process issued on or after January 1, 1934 (sections 6, 10, 13–19), appearance (section 20), and trial practice (sections 48–73), shall apply to proceedings instituted prior to January 1, 1934, and not on trial prior to that day. *Except as provided by this rule, or by written stipulation of parties, or by order of the court, upon notice and motion, proceedings instituted prior to January 1, 1934, shall not be governed by the Civil Practice Act.*" (Italics ours.)

We hold that the time limit fixed by the new Practice Act did not apply to the instant proceeding, and that plaintiff filed the mandate within the time fixed by the old Practice Act.

There is no merit in defendant's contention that "in view of the opinion of this court reversing and remanding the cause, the trial court erred in entering judgment on the same record containing the same evidence as was before this court in the former appeal." Our

decision upon the second appeal turned solely upon the question as to whether or not, under the undisputed evidence, the act of the Mexican was intentional within the meaning and intent of Part V of the policy, and we held that it was intentional. The present contention of plaintiff that clause (3) did not exclude liability for the intentional killing of the insured by another, was not raised upon that appeal. In our opinion, reversing that judgment and remanding the cause for a new trial, we stated, "We have reached the conclusion that justice requires a retrial of this cause." In the instant appeal the major issue is whether the word "injury," as used in Part V (3) of the policy includes "fatal injury." Upon the third trial the trial court had control of the pleadings and had the right to permit plaintiff to file the demurrer to the special pleas in order to directly raise an issue essential to his right of recovery.

Defendant contends that "Part V of the contract of insurance is not ambiguous. Its terms are definite and certain. It precludes recovery in this case on the undisputed facts." The material part of Part V reads as follows:

"Part V. Not Covered.

"This policy does not cover any loss . . . (3) if the injury causing it results from the intentional act of the Insured or of any other person excepting, however, assaults committed upon the Insured for the sole purpose of burglary or robbery and also excepting assaults incurred by the Insured while engaged in the proper performance of the duties of his occupation and provoked solely thereby. . . ."

Plaintiff contends that Part V (3) does not preclude a recovery where the injuries to the insured are fatal. Defendant contends that it does. The trial court sustained plaintiff's position. We have recently had occasion to pass upon the same language in another policy

of this defendant (*Porter v. Continental Casualty Co.,* 277 Ill. App. 492). There the provision was Part IX (3). To quote from our opinion (500–2):

"Plaintiff further contends that even if clause (3) were not a violation of clause (6), nevertheless, it must be held, under the phraseology of the clause and the rules of law that govern its interpretation, that it excludes indemnifiable losses payable to the insured which might result from the intentional acts of himself or any other person but does not exclude liability for the intentional killing of the insured by another; that if the defendant intended to protect itself against the liability for the intentional killing of the insured by another, it could have readily so provided, in clause (3), by apt words that would have apprised the insured that the policy did not cover any loss resulting from a fatal injury intentionally inflicted upon him by another person, and plaintiff further argues that the word 'injury,' as used in the clause, must be held to mean a bodily harm that does not result in death. Webster's New International Dictionary defines 'injure' as follows: 'To do harm to; to hurt; damage; impair; to hurt or wound, as the person; to impair the soundness of, as health'; and defines the word 'injury' as 'Damage or hurt done to or suffered by a person or thing; detriment to, or violation of, person, character, feelings, rights, property, or interests, or the value of a thing.' Funk and Wagnalls' New Standard Dictionary of the English Language defines 'injury' as follows: 'Whatever reduces the utility or mars the integrity of the body.' In *Interstate Business Men's Accident Ass'n v. Dunn,* 178 Ky. 193, the policy insured against certain accidental injuries and provided that if the insured sustained any of the said injuries and death resulted the company would pay the beneficiary $5,000. It further provided that the insurance 'shall not extend to or cover any loss due to . . . the act of any

person done to injure the insured.' The insured was intentionally shot and killed and the company denied liability under the exemption provision. The Kentucky court held that 'injure' meant 'to do harm to; to hurt; to damage, as to hurt or wound,' and that such word is never used to describe fatal injuries but is customarily confined to non-fatal injuries; that the exemption clause did not give the word 'injuries' a broader meaning than it has in common usage and that if the company had desired to give it a broader meaning it might very readily have provided that 'loss of life' should be included in the word 'injuries.' In *American Accident Co. of Louisville v. Carson,* 99 Ky. 441, the company issued a policy against injuries or death resulting from violent, accidental means containing an exemption clause which provided: 'This insurance does not cover . . . nor extend to or cover intentional injuries inflicted by the insured or any other person. . . . ' The insured was intentionally shot and killed by another. It was held that it was well settled that such a clause refers to only 'non-fatal injuries not inflicted by the insured or any other person.' The Kentucky court calls attention to the fact that many accident policies, in their exemption clauses, use a form that plainly apprises the insured that when intentional injuries or death are inflicted upon the insured by himself or any other person the company is protected against loss. (See also *Davis v. Massachusetts Protective Ass'n,* 223 Ky. 626; *Woods v. Provident Life & Accident Ins. Co. of Chattanooga,* 240 Ky. 398; *Hessler v. Federal Casualty Co.,* 190 Ind. 68, 129 N. E. 325; *Business Men's Indemnity Ass'n v. Washburn,* 94 Ind. App. 395, 157 N. E. 104; *Lincoln Health & Accident Ins. Co. v. Buckner,* 117 Okla. 35, 245 Pac. 582; *International Travelers' Ass'n v. Barnes* (Tex. Civ. App.), 43 S. W. (2d) 135; *Gavula v. United States Health & Accident Ins. Co.,* 15 Penn. Dist. Rep. 432.) If we deemed

it necessary other cases to the same effect might be cited.

"Plaintiff also argues, and with some force, that certain other provisions of the policy sustain her interpretation of clause (3), but we do not deem it necessary to specially refer to the same.

"Defendant has cited *Ziolkowski v. Continental Casualty Co., supra,* (270 Ill. App. 286) in support of its interpretation of section (3). The *Ziolkowski* case was before this branch of the court and our decision turned upon the question as to whether, or not, under the undisputed evidence the act of the Mexican was intentional within the meaning and intent of Part V of the policy, and we held that it was intentional. The contention of plaintiff in this case that clause (3) did not exclude liability for the intentional killing of the insured by another, was not raised in the *Ziolkowski* case.

"The instant contract of insurance was drawn by defendant, and even if the language of clause (3) were reasonably susceptible of two interpretations, nevertheless, under the settled rule of law, that interpretation must be adopted which will not defeat plaintiff's claim.

"After a very careful consideration of the questions involved we have reached the conclusion that both of the contentions of plaintiff in respect to clause (3) are sound, and if we are right in our conclusion it follows that the trial court erred in refusing to find for plaintiff and in finding for defendant."

In addition to the cases that we there cited in support of our ruling we now add *National Life & Accident Ins. Co. v. May,* 170 Okla. 198, 39 P. (2d) 107, decided December 4, 1934; and *Housh v. Pacific States Life Ins. Co.,* 2 Cal. App. (2d) 14, 37 P. (2d) 741, decided by the District Court of Appeal, Third District, California, November 5, 1934. On December 17, 1934, the Supreme

Court of California denied defendant a hearing in that case.

In support of its position defendant cites the following cases: *Continental Casualty Co. v. Morris,* 46 Tex. Civ. App. 394, 102 S. W. 773; *Ryan v. Continental Casualty Co.,* 94 Neb. 35, 142 N. W. 288; *Fernando v. Continental Casualty Co.,* 169 Minn. 53, 210 N. W. 634; *Continental Casualty Co. v. Klinge,* 82 Ind. App. 277, 144 N. E. 246; *Potestio v. Continental Casualty Co.,* 181 Wash. 480, 43 P. (2d) 956. It will be noted that these cases all involve appeals by the instant defendant. In *Continental Casualty Co. v. Morris* it appears that the language of the exemption clause is different from the exemption clause in the case at bar. Furthermore, the decision in that case was not followed in a later decision by the same court (*Provident Life & Accident Ins. Co. v. Johnson* (Tex. Civ. App.), 235 S. W. 650), and the court was of the opinion that the *Morris* case could be distinguished upon the facts. The court, in *Provident Life & Accident Ins. Co. v. Johnson,* cites with approval *Interstate Business Men's Accident Ass'n v. Dunn,* 178 Ky. 193; *American Accident Co. of Louisville v. Carson,* 99 Ky. 441, and also *Gavula v. United States Health & Accident Ins. Co.,* 15 Penn. Dist. Rep. 432, which we cited, *inter alia,* in support of our opinion in the *Porter* case. The *Morris* case is expressly disapproved in *Interstate Business Men's Accident Ass'n v. Dunn, supra.* In *Ryan v. Continental Casualty Co., supra,* the assured was killed in a fight, and a different question was presented to the court. In *Fernando v. Continental Casualty Co., supra,* it appears that the assured, on the morning he was shot, was at the home of a woman with whom he had been friendly; that he had left his revolver in a trunk in the front room of the premises; that he demanded money of the woman, who told him that she had none; that a quarrel and fight followed, in which he hit her and

then started for the trunk; that she also started for the trunk, got the gun and shot him. She was indicted for murder and sentenced to the penitentiary on a plea of guilty of manslaughter in the second degree. The court held that under the facts of the case the insured's death was the result of an "intentional act" within the policy. The question before us was not raised nor discussed in that case. In *Continental Casualty Co. v. Klinge, supra,* the insured was killed by a police officer while he was fleeing from the scene of an intended crime. There, like in other cases cited by defendant, the killing was provoked by the insured, and the court merely held that the injury which caused the death of the assured resulted from the intentional act of the officer who did the shooting. Furthermore, the provision in that policy provided that it "does not cover any loss . . . which results from the intentional act of the insured," etc., while in the present case the policy provides that it does not cover any loss "(3) if the injury causing it results from the intentional act of the Insured," etc. However, in a later decision, *Business Men's Indemnity Ass'n v. Washburn,* 94 Ind. App. 395, 157 N. E. 104, the Indiana Appellate Court distinguished *Continental Casualty Co. v. Klinge* and followed the ruling in *Interstate Business Men's Accident Ass'n v. Dunn, supra,* cited in our opinion in the *Porter* case. The Supreme Court of Iowa, in *Olson v. Southern Surety Co.,* 201 Iowa 1334, 208 N. W. 213, 217, expressly refused to accept the decision in *Ryan v. Continental Casualty Co.* as authority, and also questioned the reasoning of the courts in *Continental Casualty Co. v. Morris* and *Continental Casualty Co. v. Klinge.* In *Potestio v. Continental Casualty Co., supra,* it appears that as the result of an enmity between Peter Malito, the assured, and one Potestio, the latter shot and killed the assured. That case seems to support defendant's position, but the Washington court cites in sup-

port of its ruling *Continental Casualty Co. v. Klinge, Fernando v. Continental Casualty Co.* and *Continental Casualty Co. v. Morris, supra,* which cases do not support the ruling, and none, as we have heretofore shown, passed upon the question now before us. It is apparent from the absence in the opinion of the many authorities that might have been cited in favor of plaintiff Potestio's position, that the case for the latter was not well presented to the Washington Supreme Court. After a careful re-examination of the question involved in the instant contention we are of the opinion that our conclusion in *Porter v. Continental Casualty Co.* is sound. Defendant did not prosecute an appeal in that case and if our holding was correct it follows that the trial court in the instant proceeding did not err in sustaining the demurrer to the special pleas.

Plaintiff still contends that our former decision in this case, that the act of the Mexican was intentional within the meaning and intent of Part V of the policy, runs counter to a number of well considered cases, but we adhere to our former ruling upon that question. Should this case go to the Supreme Court plaintiff will there have the right to have that question passed upon.

The instant contract of insurance was drawn by defendant, and, as we stated in the *Porter* case, "even if the language of clause (3) were reasonably susceptible of two interpretations, nevertheless, under the settled rule of law, that interpretation must be adopted which will not defeat plaintiff's claim." Despite the fact that in a number of cases the meaning of the language in question has been the subject of serious dispute, defendant persists in retaining it in its policies. If it intended to protect itself against liability for the intentional killing of the assured by another, it could have readily so provided, in clause (3), by apt words that would have clearly apprised the assured that the policy did not cover any loss resulting from a fatal injury

intentionally inflicted upon him by another person. An insurance company has no right to so phrase provisions in its policies that the assured will likely be misled thereby. In the *Porter* case we were obliged to hold that the excepted loss clause in the policy of this company did not comply with Cahill's Ill. Rev. St. 1933, ch. 73, ¶ 468, clause (6), which requires exceptions of such policy to be pointed with the same prominence as the benefits to which they apply. Plaintiff contends that certain other provisions of the policy sustain his interpretation of Part V (3), and while we believe there is merit in this contention, we do not deem it necessary to specifically refer to the provisions upon which plaintiff relies.

The judgment of the superior court of Cook county is affirmed.

*Affirmed.*

Sullivan and Friend, JJ., concur.