(No. 23842.—

STEVE ZIOLKOWSKI, Appellee, *vs.* THE CONTINENTAL CAS-
UALTY COMPANY, Appellant.

*Opinion filed February 18, 1937—Rehearing denied April 13, 1937.*

GEORGE C. BLISS, for appellant.

PEDEN, MELANIPHY, RYAN & ANDREAS, (JOHN C. MELANIPHY, and GERALD RYAN, of counsel,) for appellee.

Mr. JUSTICE FARTHING delivered the opinion of the court:

We granted appellant, the Continental Casualty Company, leave to appeal from a judgment of the Appellate Court for the First District in favor of Steve Ziolkowski, appellee, who was the beneficiary named in the accident insurance policy issued by the company to the deceased, Joseph Sarnowski.

On May 19, 1930, Ziolkowski filed the declaration, containing one count and also a copy of the policy of insurance, in the superior court of Cook county. He obtained a judgment in that court, but on the first appeal the judgment was reversed and the cause remanded for a new trial, because of the exclusion of certain documentary evidence.

(See *Ziolkowski* v. *Continental Casualty Co.* 263 Ill. App. 31.) The second trial also resulted in a judgment for the plaintiff but the Appellate Court again reversed the judgment and remanded the cause to the superior court for a new trial and found, from the evidence in the record then before it, that death of the insured resulted from the intentional act of a third person. (See *Ziolkowski* v. *Continental Casualty Co.* 270 Ill. App. 286.) This decision was made in April, 1933. The abstract shows that the mandate of the Appellate Court was ordered on January 4, 1935, and that on January 25, 1935, an order was entered in the superior court of Cook county, re-instating the case and placing it at the foot of the trial calendar. The third trial was had before the court, without a jury, and resulted in a judgment for plaintiff for $2979 and costs. It is the affirmance of this judgment by the Appellate Court that is involved in this appeal. See *Ziolkowski* v. *Continental Casualty Co.* 284 Ill. App. 505.

Appellant filed a plea of the general issue to the declaration. It also filed two special pleas in the first of which it is alleged that "the injury causing the loss of life of insured resulted from an intentional act of the insured or some other person;" and in the second of which it is alleged that "the injury causing the loss of life of insured resulted from an intentional act of another person, to-wit, a stab wound, which assault was not committed upon the insured by such other person for the sole purpose of burglary or robbery and which assault was not incurred by insured while engaged in the proper performance of the duties of his occupation and provoked solely thereby," etc. Replications were filed to these special pleas but at the close of the evidence in the third trial, appellee withdrew his replications and filed a demurrer to the pleas, by leave of court, and his demurrer was sustained.

Appellant relies on the following part of the policy, in support of its contention that the death of Sarnowski was

not covered thereby: "Part V. NOT COVERED. This policy does not cover any loss * * * (3) if the injury causing it results from the intentional act of the Insured or of any other person, excepting, however, assaults committed upon the Insured for the sole purpose of burglary or robbery and also excepting assaults incurred by the Insured while engaged in the proper performance of the duties of his occupation and provoked solely thereby;" etc. The heading of the policy is: "This policy provides indemnity for loss of life, limb, limbs, sight or time caused by accidental means—all to the extent herein provided." It is also provided, in the forepart of the policy, that the company promises to pay "indemnity for loss of life (suicide or self-destruction while either sane or insane not included,) limb, limbs, sight or time resulting from a personal bodily injury which is effected solely and independently of all other causes by the happening of an external, violent and purely accidental event, and which causes at once after such event total and continuous inability to engage in any labor or occupation, all in the manner and to the extent hereinafter provided. The word injury wherever hereinafter used means injury such as here described."

No question was raised as to notice and proof of loss.

It is not necessary to set out the testimony in detail. Briefly stated, it is shown that the policy was issued to Sarnowski with appellee as beneficiary, wherein the company promised to pay $2400 for the loss of Sarnowski's life, and this policy was in force at his death. On Sunday, February 23, 1930, shortly before midnight, Sarnowski and one Peter Kulik, both of whom were of Polish extraction, were walking north on the east side of Burley avenue, in Chicago. They overtook three Mexicans who shoved them off the sidewalk, stabbed Kulik in the stomach and Sarnowski in the heart. Sarnowski fell to the street, was taken to the hospital and died three hours later from shock and hemorrhages from the stab wound due to external violence

inflicted by a knife or sharp instrument. Neither Kulik nor Sarnowski knew any of the three men. There had been an altercation between Mexicans and Polish people around nine o'clock this Sunday evening, near Eighty-fourth street and Mackinaw avenue, one block east of Burley avenue, but there is no testimony showing that Kulik, Sarnowski or any of the three Mexicans they encountered on Burley avenue near midnight, had any part in the earlier trouble. After the men were injured, the Mexicans threw bricks through the windows of a restaurant into which Kulik had been carried. There is no evidence of any act on the part of Kulik or Sarnowski as they approached and reached the point where they were attacked, that would provoke an assault.

The Appellate Court correctly held that its mandate was filed within the time allowed by law and that the period of two years, provided by the Practice act of 1907, was that applicable in this case. The opinion was filed in that court on April 11, 1933, and the mandate was filed in the superior court of Cook county on January 5, 1935. The cause was ordered re-instated on January 25, 1935, and tried on February 20, 1935. The one-year provision of the Civil Practice act relative to filing mandates is not applicable to this cause. The presumption is against the intention to make a statute retrospective in its effect on existing causes of action, even though the legislature has power to cut down the time allowed previously to take procedural steps in pending litigation. (*Hathaway* v. *Merchants' Loan and Trust Co.* 218 Ill. 580, 582.) In addition, rule 1 of this court, adopted at our December term, 1933, after stating what the Civil Practice act shall apply to, says: "Except as provided by this rule, or by written stipulation of parties, or by order of the court, upon notice and motion, proceedings instituted prior to January 1, 1934, shall not be governed by the Civil Practice act." The appellee therefore filed the mandate of the Appellate Court and had the cause

re-instated in the superior court of Cook county, in accordance with law.

The appellant contends that the trial court was bound by the decision of the Appellate Court, rendered on the second appeal, and that it was error to permit appellee to withdraw his replications to the two special pleas and to demur to those pleas. Appellant also contends that the record in the third appeal is the same, or substantially the same, as that presented on the second appeal, and that appellee could not again raise the contention that Sarnowski's death was not due to an intentional act within the meaning of the policy.

In *Rigdon* v. *More*, 242 Ill. 256, we held that if a judgment in an ordinary suit at law, in which the parties are entitled to a jury trial, is reversed by the Supreme Court for errors intervening prior to the entry of the judgment and the cause is remanded generally, the parties are entitled to a trial *de novo*. It is only where the reversal is for error occurring after the entry of the verdict that the Supreme Court may direct the entry of a proper judgment on remanding a cause at law in which the parties are entitled to a jury trial.

A court of review, in reviewing a judgment or decree, may, in a proper case, remand the cause to the trial court, and if the parties are entitled to a trial by jury, as they were in the case before us, the trial court must, of course, be governed by the legal principles contained in the opinion of the reviewing court, but its conclusions as to matters of fact do not control on a later trial where the facts are to be determined in that trial. *Prentice* v. *Crane*, 240 Ill. 250.

We reviewed many important decisions on the question of the effect of a reviewing court's order of reversal, in *People* v. *Lord*, 315 Ill. 603. At page 610 we pointed out that there is a wide difference in the effect on such a decision if the judgment is one of affirmance instead of reversal, as in *People* v. *Engle*, 313 Ill. 483, and there is also

the same difference where the reviewing court passes on the merits of the case, but remands the cause after reversing a judgment or decree. A reversal and remandment deprive the trial court of the right to allow amendments to pleadings and to hear additional testimony, only when the merits of the case and the ultimate rights of the parties have been passed upon by the reviewing court. (*Roggenbuck* v. *Breuhaus,* 330 Ill. 294, 298; *Aurora and Geneva Railway Co.* v. *Harvey,* 178 Ill. 477.) But the trial court has the same powers, after a reversal and remandment without directions, that it had when the case was first tried. The case must stand the same in the court in which it is to be tried anew, upon the trial *de novo,* as it did before a judgment or decree was rendered. *Roggenbuck* v. *Breuhaus, supra.*

In *Rush* v. *Rush,* 170 Ill. 623, two grounds of reversal were urged. One was that the circuit court erred in permitting additional testimony to be introduced upon the remandment of the cause by the Appellate Court, and the other, that, considering the additional evidence competent and proper, it was insufficient to justify the decree. At page 627 we said: "The first point is without merit. It will be observed that the remandment to the circuit court was general. The court below was not required to proceed according to the opinion of the Appellate Court, nor were any specific directions whatever given. We said in *Parker* v. *Shannon,* 121 Ill. 452, following a uniform line of decisions to the same effect (p. 454) : 'When this court reverses a cause and remands it generally without any specific directions, amendments to the pleadings may be allowed upon the re-instatement of the cause in the court below.' And in *Perry* v. *Burton,* 126 Ill. 599 (on p. 601) : 'Inasmuch as the cause was reversed and remanded without directions, we think that the trial court had the power to allow amendments to the pleadings and to permit the introduction of other evidence, in accordance with the views ex-

pressed in *Chickering* v. *Failes,* 29 Ill. 294, and *Cable* v. *Ellis,* 120 id. 136.' "

The superior court was given no specific directions by the Appellate Court in the decision rendered on the second appeal. It was within its power and authority to permit the appellee to withdraw his replications to the two special pleas of appellant. This contention must also be overruled.

"Part V" of the policy, according to appellee, does not preclude recovery when the injury to the insured is fatal. The Appellate Court correctly held, in its last opinion in this case, that injury does not include death. Webster's New International Dictionary defines injury as a damage or hurt done to or suffered by a person or thing; detriment to, or violation of, person, character, feelings, rights, property, or interest, or the value of a thing.

In *Interstate Business Men's Accident Ass'n* v. *Dunn,* 178 Ky. 193, the insured was intentionally shot and killed. The policy there sued on provided that it should not cover "any loss due to * * * the act of any person done to injure the insured." The holding of the Kentucky court of last resort was that "to injure" was to hurt or wound, but that the term does not include a fatality; that the exemption clause in the policy did not give the word "injuries" a broader meaning than it has in common usage, and that if the insurance company desired to give the word "injury" a broader meaning it could readily have provided that "loss of life" should be included in the word "injuries." To the same effect see also *American Accident Co. of Louisville* v. *Carson,* 99 Ky. 441.

We discussed, among other decisions, *United States Mutual Accident Ass'n* v. *Barry,* 131 U. S. 100, in *Higgins* v. *The Midland Casualty Co.* 281 Ill. 431, and quoted as follows: "The two companions of the deceased jumped from the same platform at the same time and place and alighted safely. It must be presumed not only that the deceased intended to alight safely but thought that he would.

The jury were, on all of the evidence, at liberty to say that it was an accident that he did not. The court properly instructed them that the jumping off the platform was the means by which the injury, if any was sustained, was caused; that the question was whether there was anything accidental, unforeseen, involuntary, unexpected, in the act of jumping, from the time the deceased left the platform until he alighted on the ground; that the term 'accidental' was used in the policy in its ordinary, popular sense, as meaning 'happening by chance; unexpectedly taking place; not according to the usual course of things, or not as expected;' that if a result is such as follows from ordinary means voluntarily employed in a not unusual or unexpected way, it cannot be called a result effected by accidental means, but that if, in the act which precedes the injury, something unforeseen, unexpected, unusual occurs, which produces the injury, then the injury has resulted through accidental means."

At page 438 of the *Higgins* decision we discussed *Lovelace* v. *Travelers' Protective Ass'n*, 126 Mo. 104, with approval and said: "In *Lovelace* v. *Travelers' Protective Ass'n, supra,* cited with approval in *Hutton* v. *States Accident Ins. Co. supra,* (267 Ill. 267), the insured attempted to eject a man who was drunk and boisterous from the office of a hotel. In doing this he used no other means than his hands, and while making the attempt, the other drew a pistol and shot him, causing his death. The court there held that the death of Lovelace was an accident and not a risk voluntarily assumed, inasmuch as he had made the attempt to eject the other by force from the office of the hotel without knowing that the other was armed."

In *Interstate Business Men's Ass'n* v. *Lester,* 257 Fed. 225, 168 C. C. A., 309, at p. 230, it was said: "The line of distinction is this: if the party does something which culpably provokes or induces the act causing his injury or death, then the result is not accidental; but, if he is wholly

free from culpability himself, the result is accidental as to him, though it may have been within the deliberate intent of the aggressor."

We have quoted, in the forepart of this opinion, the part of the policy relied on by appellant as exempting such a cause of death as that which ended Sarnowski's life, from the causes it says are covered by the policy in suit. But we also quoted the earlier and contradictory part of the policy. The appellant could have provided, by clear and unambiguous words, that both injuries and death resulting from unprovoked assaults by third persons were not to be covered and that this policy was to create no liability therefor, had it seen fit to do so. By using the term "injuries," and by the use of the language quoted from "Part V" of the policy, either of two constructions can reasonably be placed upon that provision of the contract of insurance. There is, therefore, ambiguity in this part of the policy and it is well settled that policies of accident insurance are to be liberally construed in favor of the insured. In case there is any ambiguity in the policy, the rule is that all provisions, conditions or exceptions which in any way tend to limit or defeat liability thereunder, should be construed most favorably to the insured. *Higgins* v. *The Midland Casualty Co. supra;* 1, Corpus Juris, 414.

The injury which caused Sarnowski's death was accidental, so far as he was concerned, and within the meaning of this policy. The ambiguity in "Part V" must be resolved in favor of the appellee.

These things being true, it is not necessary to determine what, if any, effect was produced by way of binding the appellee, by the determination of the Appellate Court on the second appeal, adhered to in its decision on the third appeal, that the act of the Mexican was the intentional act of a third person.

We have examined the decisions relied on by appellant, principal among which is *Potestio* v. *Continental Casualty*

604

*Co.* 181 Wash. 480, 43 Pac. (2d) 956. Although that decision involves the same part of the policy as that which we have just considered, and the holding is that there was no ambiguity contained therein, we decline to follow that decision.

The judgment of the Appellate Court now before us is correct and it is affirmed.

*Judgment affirmed.*